[Civil No. 3270.  Filed June 13, 1933.]

[22 Pac. (2d) 827.]

AMOS A. BETTS, LOREN VAUGHN and CHARLES R. HOWE, the Successor in Office of W. D. CLAYPOOL, as Members of and Constituting the Corporation Commission of the State of Arizona, E. M. WHITWORTH, as Superintendent of the Motor Vehicle Division of the Arizona Highway Department, and K. BERRY PETERSON, Attorney General of the State of Arizona, Appellants, v. LIGHTNING DELIVERY COMPANY, a Corporation, ARIZONA STORAGE AND DISTRIBUTING COMPANY, a Corporation, CHAMBERS TRANSFER AND STORAGE COMPANY, a Corporation, and All Other Persons and Corporations Similarly Situated, Appellees.

Mr. K. Berry Peterson, Attorney General and Mr. Riney B. Salmon and Mr. Arthur T. La Prade, Assistant Attorneys General, for Appellants.

Messrs. Sloan, McKesson & Scott, for Appellees.

ROSS, C. J.—This is the second time this case has come here. The question involved in this appeal is the liability of the Lightning Delivery Company, Arizona Storage and Distributing Company and Chambers Transfer and Storage Company (to which we shall refer as the companies) to pay a license tax of 2½ per cent. of their gross receipts from their operations in this state as common carriers of freight. The companies, contending that they were not for various reasons liable for the tax, brought suit against the members of the corporation commission, the superintendent of motor vehicles, and the Attorney General to enjoin them from proceeding to collect the tax. The defendants in addition to defenses, filed a cross-complaint praying judgment against the companies for past-due license tax.

In the former appeal (*Claypool* v. *Lightning Delivery Co.*, 38 Ariz. 262, 299 Pac. 126) the holding was with the defendants. All of the objections of the companies to the license tax were denied and the case was reversed and remanded "with instructions . . . to proceed to a hearing on defendants' cross-complaints in accordance with the principles laid down in this opinion."

Upon the case reaching the lower court the defendants filed an amended cross-complaint in which it is alleged that the companies had failed to pay their license tax or to file verified monthly statements show-

ing the gross receipts of their business over the period from September, 1927, to May, 1931, both inclusive, although they had been furnished with proper and suitable forms for such purpose. It is alleged that because of the failure of the companies to furnish to the superintendent of motor vehicles monthly statements of their gross receipts as common carriers, the superintendent informed himself as to the amount of license tax due the state of Arizona on account of their operations for each of the calendar months as aforesaid, and from such information did fix and determine the amount of the license tax due the state, itemizing it by months. It is also alleged that the cross-complaint was filed by the Attorney General upon the request of the superintendent of motor vehicles.

The companies demurred to the cross-complaint on the ground that the superintendent of motor vehicles had arbitrarily fixed and determined the amount of license tax due without any notice to the companies or opportunity for them to have a hearing thereon, in contravention of the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States. This demurrer was sustained, and, the cross-complainants electing to stand on the cross-complaint, judgment was rendered against them. They have appealed.

The particular statutes providing for the license tax, and the manner and time for its payment, and upon default the procedure to enforce such payment, are sections 1680, 1681, and 1682 of the Revised Code of 1928, reading as follows:

"§ 1680. *License tax on operators of commercial vehicles; determining gross receipts.*

"Every person owning, operating or managing any motor vehicle used in transportation of persons or property as a common carrier for compensation over any public highway, other than busses used exclusively for the transportation of pupils to or from

any public school when owned or operated by the school or school district, shall in addition to all other taxes and fees, pay the following license tax: When engaged in transportation of persons, or persons and baggage, or persons and express, or persons, baggage and express, where the same is transported on the same motor vehicle, shall monthly pay a license tax equal to two per cent. of the gross receipts from the operation of such companies within this state; when operating motor vehicles engaged in the business of transporting property shall monthly pay a license tax equal to two and one-half per cent. of the gross receipts from operations of such company within this state; when operating partly within and partly without this state the gross receipts within this state shall be deemed to be all receipts of business beginning and ending within this state, and a proportion, based upon the proportion of the mileage within this state to the entire mileage over which business is done, of receipts on all business passing through, into or out of this state.

"§ 1681. *Corporations commission to furnish names of permit holders; monthly statement and tax payment.*

"The vehicle superintendent shall enforce the provisions of this article. The corporation commission shall furnish to the superintendent the name of every person to whom a permit to operate a motor vehicle in the business of transporting persons or property for compensation over any public highway is issued, together with such information as the superintendent may require.

"The taxes prescribed in the preceding section shall be paid to the superintendent on or before the fifteenth day of each month for the last past calendar month, and a sworn statement filed therewith on forms furnished by him showing the gross receipts of such person for each month, on business beginning and ending in this state, the gross receipts on all business passing through, into or out of this state, the number of motor vehicles operated in this state, the total mileage operated within this state, and such other information as may be required by the superintendent.

"§ 1682. *Failure to pay tax and file statement; penalty; lien for; collection.*

"If any person fails to pay such license tax, or file the statement herein provided within five days from the day such taxes become due, his permit shall be revoked by the corporation commission, and a penalty of twenty-five per cent of such tax shall be imposed. In such case the superintendent shall inform himself as best he may and fix the amount of such license tax due the state from such persons for such calendar month, and such persons shall be estopped from questioning the amount thereof. The license tax and penalty shall, from the date they are due, constitute a lien upon all personal property in this state belonging to such person, and the attorney general shall upon the request of the superintendent, prosecute an action to enforce the same."

The companies assert that the method pursued by the superintendent of motor vehicles in determining the license tax due the state, in effect, denied them their day in court. Reliance is had upon the rule announced in *Central of Georgia Ry. Co. v. Wright,* 207 U. S. 127, 28 Sup. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463. In that case it was held that where the basis of a tax is valuation, the taxpayer must at some stage of the taxing process be given an opportunity to be heard, and that a law denying such opportunity denies "due process." This rule is unquestionably correct, but it can have no application if and when the tax is a certain percentage of the gross receipts of a business. When the legislature, as here, places the tax at 2½ per cent. of the gross receipts of the common carriers of freight, to be calculated upon the sworn statement of the carrier as made out by him, he would need no hearing to protect himself from overcharges. In rendering his statement of his gross receipts, it is he who ascertains the facts fixing the amount of his license tax. In a dispute as to whether such statement is correct, the burden doubtless would be on those questioning its

correctness. The amount of the tax is not dependent upon the value of the carrier's plant and rolling stock, but upon the gross receipts.

The legislature of the state of New York in 1905 passed a law imposing a tax on stock transfers to be paid by affixing to such transfers an adhesive stamp or stamps. And the court in *People* v. *Reardon,* 184 N. Y. 431, 77 N. E. 970, 112 Am. St. Rep. 628, 6 Ann. Cas. 515, 8 L. R. A. (N. S.) 413, in discussing the nature of said tax, said:

"It is claimed that the statute is invalid because it fixes the amount of the tax regardless of the value of the certificates sold or of the sum for which they are sold. The tax in question is an excise tax which need not depend upon any principle of valuation or on any notice to the taxpayer. It is not a direct tax governed by the rule of appraisement, but an indirect tax governed by the rule of uniformity. It is not like a general tax upon the bulk of property in the state which must be paid in any event, for if there is no sale there is no tax. Neither notice nor grievance day is required, for no valuation is made except by the statute itself, and there is no provision in either Constitution requiring such a tax to be laid on an *ad valorem* basis. There can be no tax without a sale, even if the property is of great value and is owned in every household. When a sale is made the tax follows, and the Legislature had the right to measure it in any way that it saw fit. A tax of two cents on every check, regardless of the amount for which it was drawn, and of five cents on a written contract, whether it covered a transaction involving hundreds or thousands, may be referred to as examples of what has been done without serious question in the imposition of excise taxes. A poll tax does not depend upon the income or earning capacity of the persons subject to it. A tax on carriages, guns, and watches does not rest on the value of the subjects taxed. They are counted, not appraised. *Hylton* v. *United States,* 3 Dall. (U. S.) 171, 1 L. Ed. 556; *Bells Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237, 10 Sup. Ct. 533, 33 L. Ed. 892. The same is true of an excise

tax on legal process, domestic animals, avocations, and the like of which there have been many instances during the history of the nation and the different states. Such powers of taxation, as was said in a late case, 'have admittedly belonged to state and nation from the foundation of the government.' *Knowlton* v. *Moore,* 178 U. S. 41, 60, 20 Sup. Ct. 747, 755, 44 L. Ed. 969. 'Of the different kinds of taxes which the state may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll-taxes, license taxes (not dependent on the extent of his business) and generally, specific taxes on things, or persons, or occupations. In such cases the Legislature fixes its amount and that is the end of the matter. . . . No right of his is therefore invaded. Thus if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard, there is nothing the owner can do which can affect the amount to be collected from him.' *Hagar* v. *Reclamation District,* 111 U. S. 701, 709, 4 Sup. Ct. 663, 668, 28 L. Ed. 569.

''Convenience in doing business, the slight cost of collection and the necessity of preventing evasion are important considerations in laying an excise tax and the rule of counting rather than valuing is almost universally adopted, so that the citizen may know at once the amount of the tax and pay it by affixing the stamps required, which are permanent evidence of the sum paid. The statute itself in all such cases, as well as in the case under consideration, apportions the tax and the power of apportionment is part of the power of taxation.''                              .

It would seem that the rule adhered to in the above case is applicable here and decisive. The tax imposed on the carriers is upon the gross receipts. It is ''not dependent on the extent of his business,'' but upon the number of dollars the carrier collects or receives on account thereof. Whether his sales and collections amount to $100 or $10,000, he pays at the same rate. The principle is the same whether the tax is paid by attaching to certificates of sale adhe-

sive stamps, or whether they be paid in monthly payments on a certain percentage of sales or collections for the preceding month.

Section 1682 undertakes to empower the superintendent of motor vehicles to fix the amount of license tax when the carrier has failed to pay his tax or file a statement of gross receipts within five days from the day the tax becomes due. This he is authorized to do after informing himself "as best he may." This provision leaves it with the superintendent to fix the license tax. He is not bound by the 2½ per cent. rate of gross receipts, nor by the amount of the gross receipts, nor by any rule other than his will. He may make the license as large or small as he may choose. The power and duty of fixing the amount of the license tax is of course legislative. A law appointing an agent to collect a license tax should fix the amount thereof at a definite sum, or adopt a rule from which such agent and taxpayer can, upon the ascertainment of the facts in any given case, definitely and uniformly calculate the tax. It cannot delegate its powers to fix a license tax to an agent on the theory of penalizing the carrier for failure to report his gross receipts, and to pay the license tax thereon, *Travelers' Ins. Co.* v. *Board of Assessors*, 122 La. 129, 47 So. 439, 24 L. R. A. (N. S.) 388; and, if it could, the arbitrary fixing of the license tax without notice or hearing would violate the rule of due process. The provision in section 1682 giving, or pretending to give, the superintendent of motor vehicles the power to fix the amount of the license tax, is clearly void. Deleting it from the section, which may be done without affecting other features of the law, there is, however, left a definite certain rule by which the license tax may be calculated, and also a definite penalty for failure by the carrier to file with the superintendent a sworn written statement of his gross receipts or the payment of his license tax; and

also there is left a provision that makes it the duty of the Attorney General of the state, upon the request of such officer to prosecute an action to collect the license tax and enforce the lien therein created.

In our former opinion we held that the Attorney General properly cross-complained for such license tax, and that is now the law of the case. While in his cross-complaint he has proceeded on the theory that the license tax fixed by the superintendent's figures was valid, we think the cross-complaint afforded a sufficient basis upon which the court could have heard evidence as to the gross receipts of the companies; and that a judgment for 2½ per cent. thereof and penalty would have been within the pleadings. The whole theory of the case of the companies is based, not on the fact that they had not been doing business as common carriers of freight in the state, but that they are not liable at all. They admit, indeed, in their demurrer that they have been carrying on business in the state, and, that being so, they necessarily owe the state some license tax for the privilege, which should be paid.

The judgment of the lower court is reversed and the cause remanded, with directions that further proceedings be had in accordance herewith.

LOCKWOOD and McALISTER, JJ., concur.