John SCOTT et al., Plaintiffs and Appellants,

v.

John DONNELLY, W. S. Dean, and Louis Mondry, as the duly appointed, qualified, and acting members of North Dakota Potato Development Commission, Defendants and Respondents.

No. 8134.

Supreme Court of North Dakota.

Feb. 22, 1965.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for plaintiffs and appellants.

Degnan, Hager, McElroy & Lamb, Grand Forks, for defendants and respondents.

MORRIS, Commissioner.

The plaintiffs bring this action on behalf of themselves and others similarly situated against the defendants as the appointed, qualified, and acting members of the North Dakota Potato Development Commission, organized by virtue of Chapter 4–10A, N.D.C.C. The relief sought is a declaration of the rights, status, and other legal relations of the plaintiffs with respect to Chapter 4–10A, N.D.C.C., and a determination of the constitutionality of the chapter and various sections thereof and for such further relief as the court may deem proper.

The first challenge to the constitutionality of the law in question is that it constitutes an unlawful delegation of legislative authority contrary to Section 175 of the Constitution of the State which provides that:

> "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

In support of this contention, the plaintiffs point to Section 4–10A–06, N.D.C.C., which provides, among other things, for the collection of "fees" not exceeding one cent per hundredweight of potatoes shipped and provides for the disbursement of the funds arising from such collection.

It is further alleged that the Commission promulgated an order which became effective July 18, 1956, which established a tax of one cent per hundredweight on all potatoes produced or sold within the area of the counties of Pembina, Walsh, Cavalier, Towner, Grand Forks, Nelson, Steele, Traill, Cass, Richland, and Ramsey in the State of North Dakota. The defendants admit the issuance of the order, which reads as follows:

"NORTH DAKOTA POTATO DEVELOPMENT COMMISSION

"ORDER RELATING TO FIXING OF ONE CENT FEE PER HUNDREDWEIGHT OF POTATOES SHIPPED OR SOLD IN THE RED RIVER VALLEY OF NORTH DAKOTA

"Under and by virtue of Chapter 94 of the Session Laws of North Dakota

for 1951, and as amended, the North Dakota Potato Development Commission does hereby prescribe that Section 1 of Regulation No. 1 be amended to read as follows:

'There is hereby fixed and established a fee of one per [sic] cent per hundredweight on all potatoes produced and sold or shipped within the said Area, from and after August 1, 1956, and every person engaged in the production processing or shipping of potatoes in said Area is directed to pay said fee to the area control board. The said fee shall be paid by the person who first ships or sells said potatoes within the Area; provided, however, that the act of any producer in transporting potatoes grown by the respective producer to a grading, storing, or loading point in the Area for the purpose of having said potatoes thus graded, stored, or loaded for shipment shall not constitute an act of shipping in determining who is the person who first ships or sells potatoes and is liable for payment of the fee. In determining the person who must pay said fee the shipping will be deemed to take place when the potatoes are loaded at any place within the area in a railroad car, truck, or other conveyance in which the potatoes are to be transported for sale or otherwise. When the proper fee has once been paid on any lot of potatoes the same shall not be subject to any further payment of fee.

"Said regulation and amendment affect the Red River Valley area, including the counties of Pembina, Walsh, Cavalier, Towner, Grand Forks, Nelson, Steele, Traill, Cass, Richland, and Ramsey, of the State of North Dakota.'

"This amendment to Regulation No. 1 shall become effective from and after 12:01 a. m., o'clock the 1st day of Au-

gust, 1956, until such time as repealed by the Control Board.

"North Dakota Potato Development Commission

"CLIFFORD MOQUIST, PRESIDENT
"LLOYD ROBBIE, VICE-PRESIDENT

"ART NELSON, SECRETARY

"DATED AT:

"East Grand Forks, Minn.
"July 18, 1956"

The plaintiffs also allege that portions of Chapter 4–10A, N.D.C.C., are violative of Section 69, Subsections 21 and 23, and Section 186 of the Constitution of the State of North Dakota.

Both the plaintiffs and the defendants made motions for summary judgment.

The court denied the plaintiffs' motion for summary judgment for the relief prayed for in the complaint, and granted the defendants' motion for a dismissal of the complaint. Judgment was ordered and entered accordingly. The plaintiffs appeal.

The controlling issue is the challenge of the plaintiffs to the constitutionality of Chapter 4–10A, N.D.C.C., on the ground that it permits the levy of a tax against the plaintiffs and others similarly situated by an appointive commission through which the Legislature may not constitutionally delegate such power which the Commission has attempted to exercise by the issuance of its order of July 18, 1956, "relating to fixing of one cent fee per hundredweight of potatoes shipped or sold in the Red River Valley of North Dakota."

Section 4–10A–01 states the title of the law to be: "Potato Improvement, Marketing and Advertising Act of North Dakota."

Section 4–10A–03, N.D.C.C., recites the purposes:

"(a) To enable the potato producers and shippers of this state to better

meet the competition from other states who are conducting potato improvement, marketing, and advertising programs.

"(b) To establish and promote orderly marketing of potatoes, to provide for potato inspection by the established federal-state inspection service or the use of special permits or identification to permit storage or processing in transit, and to provide methods and means for ascertaining and developing better methods of producing and marketing potatoes.

"(c) To provide means and methods for the development of new and larger markets for potatoes grown within the state.

"(d) To eliminate or reduce the economic waste in production, packing, and marketing of potatoes grown within the state."

The next section defines the term "potatoes" as "any and all white Irish potatoes produced or handled within the state."

Section 4–10A–05 states that the Governor shall appoint a commission consisting of three members, with certain specific qualifications, to be known as the "North Dakota potato development commission."

Section 4–10A–06 enumerates powers of the Commission and authorizes it "to issue, administer, and enforce the provisions of the commission's orders hereunder regulating the shipment of cull potatoes and the collection of fees (not exceeding one cent per hundredweight of potatoes shipped), and the disbursement of funds as provided in this chapter." The last paragraph of the section provides that,

"In order to effectuate the declared policy of this chapter, the commission shall have the power, after due notice and opportunity for hearing, to prepare a commission's order and submit same to the potato industry for approval.

Such order shall not become effective unless it is approved in a public referendum by at least two-thirds of the potato growers voting in such referendum. The provisions of such commission's order shall be only those provisions provided for in subsection (a) (8) of section 4–10A–08."

Section 4–10A–08 provides for the contents of and limitations with respect to orders of the Commission. It includes:

"(7) Provisions fixing fees and the method of collecting the same as hereinafter provided."

This section also contains procedure for the termination of an order: A petition signed by at least one hundred fifty potato growers living in the counties affected by the program, of which there are at least five growers from each county signing, makes it mandatory that the Commission call a meeting at a central point with the same minimum attendance requirement and representation as that required for the petition. Two-thirds of the growers attending must vote in favor of a referendum in order to bring about a referendum vote. If a majority of the growers voting at such referendum favor termination, the order voted upon shall be terminated within thirty days after the results of the referendum are determined.

A "grower," as defined by the Act, is "any person who grows or shares in the ownership of potatoes grown for market on one or more acres." Sec. 4–10A–04(e).

In Section 4–10A–10 it is provided that:

"Orders issued by the commission under this chapter may be limited in their application by prescribing the areas or portions of the state in which a particular order shall be effective. * * *"

The Potato Development Commission has an executive arm or arms denominated

"a Board of Control." Section 4–10A–07 provides:

"(a) Any commission's order issued pursuant to this chapter shall provide for the establishment of a board of control to administer such order in accordance with its terms and provisions. * * *"

This section further provides that a board of control shall be appointed by the Commission from nominations submitted by the industry within the affected area. It consists of seven appointive members and, as ex-officio members, the Commissioner of Agriculture and Labor, the State Seed Commissioner, and the Director of the Experiment Station. The ex-officio members act in an advisory capacity, but have no vote.

Section 4–10A–09(a) charges the Board of Control with the duty of making two budgets, one to provide funds for the administration and enforcement of the Commission's orders and the other for administration and operating costs and expenses, which include amounts spent for research, development work, advertising, sales promotion, and contractual operations. "Both budgets, with the provision for collection of such necessary fees, the time and conditions of such payment, and in no case to exceed one cent per hundredweight of all potatoes sold or shipped within the area covered by the order, shall be subject to approval by the commission." Subsection (b) empowers the Board of Control to require processors, distributors, or handlers, as well as every producer affected by any marketing order, to deposit in advance amounts based upon the gross volume of sales by the producer or the gross volume of purchases or amounts handled by the other persons enumerated for the time covered by the Commission's order, subject to a later adjustment at the close of the period of time involved. Subsection (c) provides that:

"The commission shall prescribe the rules and regulations with respect to

the assessment and collection of such funds for such purposes."

Subsection (d) of Section 4–10A–09 provides that money collected by the Board of Control shall be deposited in a bank or banks approved by the Commission and may be disbursed by the control board for expenses incurred in carrying out the provisions of the order.

Section 4–10A–11(a) makes the Commission and the Board of Control responsible for the administration and enforcement of the chapter. Subsection (b) provides that the fees shall be collectible by the Board of Control through civil action, and that injunction is available to prevent future avoidance or violation of the orders issued pursuant to the chapter. It further provides:

"Violations of this chapter, or any commission's order issued pursuant thereto, shall be punishable by a fine of not to exceed one hundred dollars or confinement in the county jail for not to exceed thirty days. * * *"

Section 4–10A–12 provides that:

"Any assessment herein levied, in such specified amount as may be determined by the commission pursuant to the provisions of this chapter shall constitute a personal debt of every person so assessed and shall be due and payable to the board of control when payment is called for by the board. * *"

The first question that arises in connection with the problem of delegation of legislative power is the nature of the exaction which the law and the order authorizes the Commission to require to be paid. Subsection (g) of Section 4–10A–04 provides:

"The term 'commission's order' means any order issued by the commission pursuant to this chapter, prescribing rules and regulations pertaining to the collection of fees and disbursement of funds and restricting or regulating the sale of cull potatoes."

The authority for the collection of fees appears in Section 4–10A–09, above referred to, which requires provision to be made for collection of necessary fees not to exceed one cent per hundredweight of all potatoes sold or shipped within the area covered by the order to be included in the budgets; and in Section 4–10A–08, Subsection 7, which authorizes provisions for fixing fees and the method of collection to be included in orders. Similar authority for the collection of fees is also contained in the powers of the Commission set forth in Section 4–10A–06.

■ The appellant contends that the exaction is a tax. The respondents contend that it is not a tax, in the true sense, and is merely a regulatory fee. The taxing power is exclusively a legislative function, and a tax is an enforced contribution for public purposes. State v. Kromarek, 78 N.D. 769, 52 N.W.2d 713; Menz v. Coyle (N.D.), 117 N.W.2d 290. Whether an exaction is called a "fee" or a "tax" is of little weight in determining what it really is. Its nature is the test. Sometimes an exaction may appear to be partly for revenue and partly for regulation. If the primary purpose is revenue, it is a tax; on the other hand, if the primary purpose is regulation, it is not a tax. Cooley Taxation, Vol. 1, 4th Ed., Sec. 27, pp. 98, 99.

■ An examination of the purposes of the chapter set forth in Section 4–10A–03, the enumeration of the provisions that may be contained in the Commission's orders in Section 4–10A–08, the items enumerated in connection with the budget provisions of Section 4–10A–09, and the areas as prescribed under Section 4–10A–10 disclose that it is, to some extent, regulatory, but that the benefits secured inure to the people of the State in general and to the potato growers throughout the State in particular. The exaction is undoubtedly a tax. It is a tax, the amount of which is fixed by the Commission, subject to the limitation of one cent per hundredweight, and exacted mostly from growers of white Irish potatoes within an area determined by the Commission and collected pursuant to methods determined by the Commission within the powers vested in it by the Act. These areas are not determined by the Legislature and do not constitute either municipal corporations or political subdivisions of the State.

The respondents cite the following cases that uphold the constitutionality of excise taxes which it is contended are similar to ours: Miller v. Michigan State Apple Commission, 296 Mich. 248, 296 N.W. 245; Torigian v. Saunders, 77 S.D. 610, 97 N.W. 2d 586; State ex rel. Graham v. Enking, 59 Idaho 321, 82 P.2d 649; State v. F. H. Vahlsing, Inc., 147 Maine 417, 88 A.2d 144; Louisiana State Department of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202; and C. V. Floyd Fruit Co. v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562.

While these cases involve excise taxes levied for purposes somewhat similar to our statute's, there are two marked points of difference. None of them involves the delegation of the taxing power. The taxes in those cases were levied by the Legislature and were State-wide in the area of their application. The tax before us for consideration is not levied by the Legislature or by any municipality or political subdivision of the State. It is not levied by a local government nor is it necessarily used for the benefit of the area within which it is levied or the benefit of the people who must pay. The proceeds are applied to purposes that are largely State-wide. The Commission that is authorized by the Legislature to determine the levy represents neither the people who pay the tax nor the growers within the area in which the tax is levied, in the sense that those people have a voice in choosing the Commission. The Commission is an arm of the executive branch of the State government and not an agency of the legislative branch, in which the power of taxation rests.

In support of their contention that Chapter 4–10A, N.D.C.C., unconstitutionally del-

egates taxing power to the North Dakota Potato Development Commission, the appellants cite Vallelly v. Board of Park Commissioners, 16 N.D. 25, 111 N.W. 615, 15 L.R.A. (N.S.) 61, the sixth paragraph of the syllabus of which states:

"An act of the legislative assembly authorizing a board appointed by the city council without the consent of the people to levy general taxes is unconstitutional as a delegation of legislative power."

The conclusion of the court is summed up in the following strong words from the opinion:

"The power to tax is a legislative power, and cannot be delegated to boards or commissions whose appointment has not been in some way assented to by the people. We deem this interpretation of the Constitution sound, and that it should not be deviated from."

We would also note that in Solish v. Cormack, 17 N.D. 393, 117 N.W. 125, the court considered Vallelly v. Park Commissioners, supra, and distinguished the taxes involved in that case from special assessments levied for local improvements according to the benefits derived, and upheld the constitutionality of assessments levied under a drainage act by a drainage board appointed by county commissioners.

The case before us differs from the cases cited in the preceding paragraph in that they dealt with a municipal corporation and a political subdivision, each having a constitutional local government. In our case, there are no local governments involved and no constitutionally organized municipalities or political subdivisions of the State. It is also true that the taxes or fees herein involved are not taxes or assessments on property, but are excise taxes which are not subject to the rule of equality and uniformity in taxation required by Section 176 of the State Constitution. In re Lipschitz, 14 N.D. 622,

95 N.W. 157. Excise taxes are, nevertheless, taxes, subject to the provisions of Section 175 of the Constitution, and are subject to the rule that executive officers or boards may not be authorized to exercise uncontrolled discretion in determining the amount of the tax. 16 C.J.S. Constitutional Law, § 138b.(24), p. 626; National Life & Accident Ins. Co. v. Dempster, 168 Tenn. 446, 79 S.W.2d 564; Betts v. Lightning Delivery Co., 42 Ariz. 105, 22 P.2d 827; People of Puerto Rico v. Havemeyer, 1 Cir., 60 F.2d 10.

Van Cleve v. Passaic Valley Sewerage Commissioners, 71 N.J.L. 574, 60 A. 214, 108 Am.St.Rep. 754, involved the constitutionality of a delegation of the power to tax contained in a legislative act for the relief of the Passaic Valley Sewerage District from pollution by the construction and maintenance of a sewerage system by a commission of executive appointment. It authorized the commission to levy a tax upon all persons and property within an area not coterminous with the Passaic Valley Sewerage District for an amount depending upon the discretion of the commission. In holding the tax levy unconstitutional, the court made the following statements in the syllabus by the court:

"3. The Legislature of New Jersey, in which the governmental power of taxation resides, does not possess the power to delegate to another body having no governmental function the authority to determine, in its judgment or discretion, the amount to be raised by taxation.

"4. A grant of the power of local taxation, to be valid, must conform to the fundamental doctrine that the area over which such power extends shall be coincident with a political district of the state exercising some power of local government over the area selected for taxation.

"5. A grant of the right to determine the amount of tax to be levied

upon a given area, being a grant of an essential element of the power of taxation, must conform to the same fundamental doctrine."

Under our statute, the board created by executive appointment has powers vested in it that are State-wide in scope and legislative in character. It is given the power to levy an excise tax not to exceed one cent per hundredweight on all white Irish potatoes sold or shipped in all portions or areas of the State. The board is also given power to determine and prescribe the areas. Where an area or areas are prescribed, the expenditure of the proceeds of the tax do not appear to be limited to the areas, but in all instances are for the benefit of the potato growers throughout the State. Liability to pay a tax provided for by an order establishing an area may be extended to certain taxpayers anywhere in the State.

Section 4–10A–09(a), N.D.C.C., in part, provides:

"Each and every person engaged in the production, processing, or handling of potatoes sold or shipped within the state and directly affected by any order issued pursuant to this chapter shall pay to the control board at such time and in such manner prescribed by the order as adopted an assessment covering the budgets provided by this chapter. * * *"

This provision is also of importance in connection with the referendum provision of the statute which will be discussed later.

The areas which the Commission has power to designate have no local government, as such. Neither the growers nor the taxpayers in general have a voice in determining the purposes for which the tax proceeds may be spent, either through a governmental body of their own choosing or by referendum. If we assume that the Legislature has power to levy an excise

tax for the purposes set forth in the Act, it is, nevertheless, clear that the delegation to the North Dakota Potato Development Commission of the power to levy the tax variously designated in the Act as a "fee," "tax," and "assessment," and determine the areas of the State in which orders of the Commission shall apply, is an unconstitutional delegation of power.

The respondents refer to the last paragraph of Section 4–10A–06, N.D.C.C., which provides that:

"* * * Such order shall not become effective unless it is approved in a public referendum by at least two-thirds of the potato growers voting in such referendum. * * *"

A statement in Cooley Taxation, Vol. 1, 4th Ed., Sec. 81, p. 207, would seem to lend cursory support to the respondents' argument. Therein it is said:

"Of course, if the people of a local district have in any way consented to the delegation of the power to tax to a local board, they cannot contest the validity of the delegation of power."

However, the respondents gain no alleviation from the cases cited in support of the text and similar cases cited in Carlberg v. Metcalf, 120 Neb. 481, 234 N.W. 87. They pertain to taxes levied within the local districts created by the Legislature or by the people of such districts acting directly or through their local officials pursuant to legislative direction in creating the taxing districts. We have found no case in which legislative power has been granted to an administrative board to not only levy a tax but also determine the boundaries or area of the district in which the tax is levied.

We would further point out that our statute lays down no rules for the conduct of the referendum. Presumably, there will be some sort of vote taken, but the manner in which it shall be conducted is

apparently left entirely to the discretion of the Commission. The particular area in question is comprised of eleven counties. There is no determination by the Legislature as to whether the referendum is determined at one meeting, many meetings, by mail, or by ballots cast at designated polling places. There is no provision for determining the eligibility of voters who must be potato growers, the results of the election, or preserving a record thereof. Furthermore, only potato growers are eligible to vote in the referendum. As we have already pointed out [Sec. 4–10A–09(a), N. D.C.C.], liability for payment of the tax devolves, in part, upon persons other than growers. All taxpayers do not have a voice in the referendum. It does not insure to the people of the area or the taxpayers an opportunity to accept or reject the tax.

The referendum provisions of the Act do not validate it as against the charge that its revenue provisions constitute an unconstitutional delegation of legislative taxing power to an administrative board. The functioning of the North Dakota Potato Development Commission is wholly dependent upon the revenue supplied by the unconstitutional tax. We are impelled to hold that Chapter 4–10A, N.D.C.C., is unconstitutional and void, for the reasons stated. Since we have decided that the entire Act must fall, we pretermit discussion of challenges to the constitutionality of other specific sections.

The judgment appealed from is reversed and the case is remanded for the entry of summary judgment in favor of the appellants.

PER CURIAM.

The foregoing opinion by the Honorable JAMES MORRIS, a retired judge and duly appointed and qualified Commissioner of the Supreme Court, is adopted and made the opinion and decision of the Court.

BURKE, C. J., and ERICKSTAD, STRUTZ and TEIGEN, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case did not participate.