**RALSTON PURINA COMPANY, a Corporation, Plaintiff and Respondent,**

v.

**Gerald HAGEMEISTER, Arthur J. Lanz, Jerry David, Frank Osteryk, Arne Dahl, Dean E. Flagg, and M. L. Buchanan, the Duly Appointed, Qualified, and Acting Members of the North Dakota Poultry Improvement Board, Defendants and Appellants.**

**Civ. No. 8674.**

Supreme Court of North Dakota.

Feb. 26, 1971.

As Amended and Rehearing Denied June 28, 1971.

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, for plaintiff and respondent.

Helgi Johanneson, Atty. Gen., and John E. Adams, Asst. Atty. Gen., Bismarck, for defendants and appellants.

STRUTZ, Chief Justice.

The plaintiff brings this action against the defendants as the duly appointed, qualified, and acting members of the North Dakota Poultry Improvement Board, organized under the provisions of Chapter 4–13, North Dakota Century Code. The relief which the plaintiff seeks is a declaration of its rights, status, and legal liabilities and as to the constitutionality of Chapter 4–13, North Dakota Century Code, and certain sections thereof, and for such other and further relief as may be just and proper.

The Poultry Improvement Act was adopted by the Legislative Assembly as Chapter 7 of the Laws of 1939. Except for a few minor changes, the law remains the same as originally enacted.

Section 4–13–10, North Dakota Century Code, reads:

"No person shall engage in the business of * * * poultry or turkey feed manufacturer, wholesaler, or retailer, without first securing from the North Dakota poultry improvement board a license to engage therein. All such licenses shall expire on the first day of July of each year, and shall be issued or renewed only upon payment to the board of such fees as it may fix for each of said occupations, not exceeding, however, the amounts hereinafter set forth: * * *."

The Act then goes on to provide:

"The foregoing schedule of license charges and fees shall constitute the maximum to be charged and collected, but the North Dakota poultry improvement board, if it determines that any or all of such fees or charges are excessive or unduly burdensome, or that a lesser schedule of fees will produce all income necessary for carrying on the work of the board, may reduce the license charges and fees of any or all of such occupations. * * *"

The record discloses that, from the time this law went into effect, the license fees fixed by the Poultry Improvement Board have been the maximum fees as established by the Legislative Assembly in the original law. The legality of the assessment of such fees, however, was questioned by the plaintiff company, and, at a meeting of the Board held in Fargo, North Dakota, on December 3, 1969, a motion was unanimously adopted which ordered a reduction, effective January 1, 1970, of the license fees for poultry-feed manufacturers, wholesalers, and retailers from fifty cents per ton, the maximum fixed by the Legislature, to twenty-five cents per ton. This motion was adopted under the authority given to the Board under the law to reduce the license charges and fees from the maximum fixed by the Legislature if the Board found certain conditions and circumstances to exist.

The plaintiff, in its declaratory-judgment action, contends that the provision of the law authorizing the Board to fix the annual license fees to be paid by the various occupations and businesses covered by the law constitutes an unlawful delegation of legislative authority, contrary to Section 175 of the North Dakota Constitution.

The trial court found for the plaintiff and held the Poultry Improvement Act unconstitutional as an unlawful delegation of the taxing power by the Legislature to the Poultry Improvement Board, an appointive body, contrary to Section 175 of the North Dakota Constitution. From judgment declaring the Act unconstitutional, the defendants have taken this appeal, demanding a trial de novo.

In prosecuting their appeal, the defendants specify numerous errors and raise three issues to be determined by this court. The issues are:

1. That the State of North Dakota, being a real party in interest, should have been made a party to the suit;

2. Assuming that the State of North Dakota is, in fact, a necessary party to the suit, the State has not consented to be sued; and

3. The constitutionality of Chapter 4–13 and various sections thereof.

The first issue to be considered is whether the State of North Dakota should have been made a party to the action or proceeding. Section 32–23–11, North Dakota Century Code, provides that where declaratory relief is sought, all persons who have or claim to have any interest which could be affected by the declaration shall be made parties, and no declaration shall prejudice the rights of persons not made parties to the proceeding. The Act then goes on to provide that in any proceeding involving the validity of a statute, ordinance, or franchise, the Attorney General of the State shall be served with a copy of the proceeding and shall be entitled to be heard.

Although the proceeding for declaratory judgment to determine the rights, status, and legal relations of the plaintiff under a statute does question the validity of a State law, we do not believe that the State must be made a party to such proceeding. We base this holding on the provision in the law which states that if the validity of a municipal ordinance or franchise is being questioned, the municipality shall be made a party, but which does not provide that the State shall be made a party if a State law is challenged. In a proceeding for declaratory relief which questions the validity of a State statute, the rights of the State are safeguarded by the requirement that the Attorney General of the State be served with a copy of the proceeding and that he shall be entitled to be heard. In this case, the Attorney General was served with a copy of the proceeding. He did appear and file his answer and participate in the trial of the action. Thus the interests of the State have been fully safeguarded.

This court has held that when a declaratory-judgment proceeding is brought which involves the validity or construction of a statute, and the declaration of rights, sta-

tus, and legal liabilities would affect the power and duties of public officers, such public officers should be made parties to the action or proceeding in which the relief is sought. Langer v. State, 69 N.D. 129, 284 N.W. 238 (1939). The members of the Poultry Improvement Board, whose power and duties are affected by this action, have been made parties.

This is not the first time that the constitutionality of a statute of the State has been questioned in a declaratory-judgment action in which the State of North Dakota was not named a party. In Scott v. Donnelly, 133 N.W.2d 418 (N.D.1965), a proceeding brought against the duly appointed, qualified, and acting members of the North Dakota Potato Development Commission, the action was brought against the members of that commission for a declaration of rights, status, and other legal relations of the plaintiffs, who were potato growers. The action questioned the validity of the Potato Improvement, Marketing, and Advertising Act of the State, Chapter 4–10A of the North Dakota Century Code. This court declared the rights, status, and legal relations of the plaintiffs under the Act and passed upon the validity of the law. In that proceeding, the State of North Dakota was not made a party.

We therefore hold that in any proceeding for declaratory judgment brought against the members of the Poultry Improvement Board for a declaration of rights, status, and other legal relations of the plaintiff under the Act, it is not necessary to join the State of North Dakota as a party defendant, so long as the Attorney General of the State is served with a copy of the proceeding and is permitted to be heard in the trial of the action.

The next issue raised by the defendants on appeal is that—assuming that the State of North Dakota is the real party in interest—the action must be dismissed because the State has not consented to the suit.

Section 22 of the North Dakota Constitution provides that suits may be brought against the State in such manner, in such courts, and in such cases as the Legislative Assembly may, by law, direct. However, since we hold that the State was not a necessary party to this action, the consent of the State to the bringing of the action was not necessary.

We now proceed to the real issue in the lawsuit, and that is the constitutionality of the Act. The challenge to the constitutionality of this law is that it constitutes an unlawful delegation of legislative authority, contrary to Section 175 of the Constitution of this State.

An Act of the Legislature is presumed to be correct and valid, and any doubt as to its constitutionality must, where possible, be resolved in favor of its validity. State ex rel. Johnson v. Baker, 74 N.D. 244, 21 N.W.2d 355 (1945); Herr v. Rudolf, 75 N.D. 91, 25 N.W.2d 916, 169 A.L.R. 1388 (1947); Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D.1967).

Section 175 of the North Dakota Constitution, which the plaintiff asserts is violated by Chapter 4–13, North Dakota Century Code, provides:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

A "tax" is an enforced contribution for public purposes which in no way is dependent upon the will or consent of the person taxed. Menz v. Coyle, 117 N.W.2d 290 (N.D.1962). A license fee imposed by the State is an enforced contribution and therefore is a tax.

In urging the contention that Chapter 4–13 of the North Dakota Century Code and various sections of that Act are unconstitutional, the plaintiff points to Section 4–13–10, which provides, among other

things, that the fees for the various occupations and businesses shall be fixed by the Board. The statute provides:

"All such licenses shall expire on the first day of July of each year, and shall be issued or renewed only upon payment to the board of such fees as it may fix for each of said occupations, not exceeding, however, the amounts hereinafter set forth: * * *."

Do the powers conferred upon the Poultry Improvement Board by this law constitute a delegation of legislative power, contrary to Section 175 of the North Dakota Constitution?

■ It is elementary that except in those instances where it is expressly authorized to do so by the Constitution, as, for example, in the case of municipalities, the Legislature may not delegate purely legislative powers to any other board, body, commission, or person. However, although it may not delegate purely legislative power, it has been held that the Legislature may authorize others to do certain things and to exercise certain powers which are not exclusively legislative and which the Legislature itself might do but cannot because of the detailed nature of the things to be done. Just because the Legislature might have exercised such power itself does not necessarily mean that it must be done by that body. As the Minnesota Supreme Court has pointed out:

" * * * Pure legislative power, which can never be delegated, is the authority to make a complete law—complete as to the time it shall take effect and as to whom it shall apply—and to determine the expediency of its enactment. Although discretion to determine when and upon whom a law shall take effect may not be delegated, the legislature may confer upon a board or commission a discretionary power to ascertain, *under and pursuant to the law*, some fact or circumstance upon which the law by its own terms makes, or intends to make, its

own action depend." Lee v. Delmont, 228 Minn. 101, 36 N.W.2d 530, at 538 (1949).

■ Thus the power to ascertain certain facts, which will bring the provisions of a law into operation by its own terms, is not a delegation of legislative power. If the law sets forth reasonably clear guidelines which will enable the administrative board to ascertain the facts, so that the law takes effect on such facts under its own provisions and not according to the discretion of the administrative board, the power so delegated is not legislative.

Chief Justice Hughes of the United States Supreme Court, in the case of Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, pointed out that the Constitution never has been regarded as denying to the legislative branch the necessary flexibility to enable it to perform its functions in laying down policies and establishing standards, while leaving to other instrumentalities the making of rules within prescribed limits and the determination of facts to which such policies, declared by the Legislature, are to apply. Thus the rule of nondelegability is applicable to legislative powers only, and will not bar the Legislature from delegating such of its other powers as are not purely legislative. 16 Am.Jur.2d Constitutional Law, Sec. 242, p. 493.

■■ There are many powers which the Legislature itself might exercise which may, nonetheless, be delegated by it. While the Legislature may not abdicate its law-making powers, it may delegate to others certain things which it might properly do itself, but which it cannot conveniently perform. Society in recent years has become more and more complex, and the courts have held that the vesting in other bodies of some powers ordinarily exercised by the Legislature so that this complex society may function, is not unconstitutional so long as the Legislature itself retains the right to revoke the power which it delegates. The power to make a law is legisla-

tive, but the conferring of authority as to its execution, which authority is to be exercised under the provisions of the law itself, as enacted by the Legislature, may be delegated. The true distinction between the powers which the Legislature may delegate and those which it may not is to be determined by ascertaining whether the power granted gives authority to make a law or whether the power pertains only to the execution of the law which was enacted by the Legislative Assembly. McDougall v. Lueder, 389 Ill. 141, 58 N.E.2d 899, 156 A.L.R. 1059 (1945).

Now let us examine Section 4–13–10, North Dakota Century Code, which is claimed to be invalid because it delegates legislative power. The Legislature enacted this statute to promote the welfare of and stimulate interest in the poultry industry. It fixed the maximum license fees to be paid by poultry buyers, processors, and packers, by hatcheries, by baby-chick and turkey-poult jobbers and salesmen, by record-of-performance breeders, and by poultry-feed manufacturers, wholesalers, and retailers. It obviously would be almost impossible for the Legislature to determine the exact amount of fees necessary to supervise and regulate the various businesses mentioned, and so the Legislature gave to the Poultry Improvement Board the power, if it determines that the charges and fees fixed by the Legislature in the law are excessive or unduly burdensome, or that a lesser schedule of fees will produce all the income necessary for carrying on the work of the Board, to reduce such fees accordingly. The law does not delegate to the Board the power to enact any legislation as to the maximum fees to be paid, or as to whom the provisions of the statute shall apply. All that the Legislature has attempted to do is to confer upon the Poultry Improvement Board the power to ascertain, *under the law enacted by the Legislature,* some fact upon which the law, by its own terms, makes its action depend.

The respondent cites the case of Scott v. Donnelly, 133 N.W.2d 418 (N.D. 1965). It points out that in that case this court held that the power vested in the North Dakota Potato Development Commission to fix fees was an unconstitutional delegation of legislative power. The decision in *Scott* may be distinguished from the case now before this court. In *Scott,* the law not only permitted the Potato Development Commission to fix fees, but it also authorized it to determine the area or areas in which such fees would be applied. This court in that case found that the statute delegated to the Potato Development Commission "uncontrolled discretion" in determining these matters. No such criticism can be made in the case of the Poultry Improvement Law. The statute fixes the maximum fees to be charged, and does not give to the Poultry Improvement Board "uncontrolled discretion" in fixing fees. It is only when the fees, as fixed by the Legislature in the statute, are found to be excessive or unduly burdensome or that a lesser schedule of fees will produce all the income necessary for carrying on the work of the Board, that the Board may reduce the fees. Should such fees, as fixed by the law, prove to be inadequate for carrying on the work of the Board, the Board is given no authority to increase the fees to get the needed revenue. In the event the maximum fees set forth in the statute are insufficient, the Board would have to go to the Legislature for increased fees. Thus it will be seen that the law does not give to the Poultry Improvement Board "uncontrolled discretion" in determining the amount of fees to be charged. The Board is guided, in determining its income needs, by Section 4–13–03, North Dakota Century Code, which establishes the Board's purposes. We conclude that the statute has adequate controls within its provisions.

For reasons stated in this opinion, we hold that the provisions of the Poultry Improvement Law do not constitute an im-

proper delegation of legislative power. The judgment of the trial court is reversed.

TEIGEN, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

ON PETITION FOR REHEARING

STRUTZ, Chief Justice.

Counsel for the plaintiff have filed a petition for rehearing in which they assert that this court erred in our opinion in that we failed to determine whether the fees established by Section 4–13–10, North Dakota Century Code, were or were not a tax. They point out that the law delegates to the Poultry Improvement Board the power to "reduce" these fees, and that if such fees are a tax, our decision in this case is contrary to prior decisions of this court holding that the power to tax is a legislative power which may not be delegated. They further state that our opinion does not provide guidance for interpretation of the law under consideration.

We believe that our opinion in this matter correctly states the law, even if the fees in question are held to be a tax. Let us suppose that the Legislative Assembly should establish a maximum income tax and delegate to the Tax Commissioner, or to some public board or commission, the power to adjust such tax downward from the maximum rate established by the Legislature in the event such tax produced more than a certain amount of revenue, and providing definite guidelines for such downward revision or adjustment of the tax. Would the delegation of authority to reduce the amount of the tax under such circumstances be valid, or would such power constitute an unlawful delegation of legislative authority?

Pure legislative power never may be delegated by the Legislature to a public officer, board, or commission. Legislative power which may not be delegated includes a determination of whether the law should be enacted, the fixing of a time when the law shall take effect, and a designation of the persons to whom the provisions of the law shall apply. In other words, legislative power which may not be delegated is the power to make a complete law. However, if the law as enacted by the Legislative Assembly furnishes a reasonably clear policy or standard of action which will guide and control the public officer, commission, or board in determining the facts or situations to which the provisions of the law shall apply, so that the law will take effect upon the existence of such facts or situations by virtue of its own terms and not according to the whim, notion, or fancy of the administrative officer, commission, or board, then the power which is delegated by the Legislature to such officer, commission, or board is not legislative, but is administrative.

Applying this rule to the situation before us, we find that the authority delegated to the Poultry Improvement Board is not legislative, even though the fees imposed by the law are a tax. The expediency of the legislation was determined by the Legislative Assembly itself. The time when its provisions were to take effect is fixed in the law, and the determination as to whom its provisions shall apply is made by the Legislature and is not delegated to the Poultry Improvement Board. The amount of the fees is fixed by the Legislature by establishing a maximum fee in each category, and the maximum fee is not left to the discretion of the Board. It is only when a situation arises showing that the amount realized from such fee imposed by the law passed by the Legislature is more than is needed for the purposes for which the law was enacted that the Board is authorized to reduce the fee. Thus the authority given to the Poultry Improvement Board is not, in our opinion, legislative; that is, the Board has no authority to determine when the law shall take effect, nor has it the power to determine to whom the provisions of the law shall apply. Neither is the Board given any authority to

determine whether the law should or should not be put into effect. All of these matters were determined by the Legislature itself in the enactment of the law. The only power which was delegated to the Board was the authority to reduce the amount of the maximum fees imposed if such fees, fixed in the law by the Legislature, should produce more revenue than is needed to carry out the purposes of the Act.

Obviously the Legislature, in enacting the law, was not in a position to determine the exact amount of fees required by the Poultry Improvement Board to carry out the purposes of the Act. Certain discretionary powers must be permitted under such circumstances. Surely the plaintiff would be in no better position if the Legislature had merely fixed a maximum fee without authorizing the Board to make any reduction even though the fee fixed by the Legislature would produce more revenue than is needed to carry out the purposes of the Act. In such case, the plaintiff would be required to pay such maximum fee until it was reduced by the Legislature. Therefore, although it would be unconstitutional for the Legislature to delegate legislative power, we find that the powers delegated in this case are administrative, and it is not unconstitutional to delegate administrative authority.

While the Legislature may not delegate legislative power, it may delegate functions which are purely administrative or executive in carrying out the purposes of the Legislature as provided by the law. And the Legislature has a large discretion in determining by what agency its laws are to be administered. Visina v. Freeman, 252 Minn. 177, 89 N.W.2d 635, 653 (1958). It is only where a statute purports to vest arbitrary discretion in a public officer, commission, or board, without establishing rules for the guidance of such public officer, commission, or board, that a statute will be declared unconstitutional. Here, the rule for guidance of the Poultry Improvement Board is that where the fees fixed by the Legislature produce more revenue than is required by the Board for carrying out the purposes of the Act, the Board shall reduce such fees, thus performing a clearly administrative function.

For reasons stated herein, the petition for rehearing is denied.

PAULSON, KNUDSON, ERICKSTAD and TEIGEN, JJ., concur.