**SYVERSON, RATH AND MEHRER, P.C., Plaintiff and Appellant,**

**v.**

**Robert PETERSON, North Dakota State Auditor, Defendant and Appellee.**

**Civ. No. 920091.**

Supreme Court of North Dakota.

Jan. 22, 1993.

Richard B. Baer, P.C. (argued), Bismarck, for plaintiff and appellant.

William G. Peterson (argued), Asst. Atty. Gen., Bismarck, for defendant and appellee.

MESCHKE, Justice.

The accounting firm of Syverson, Rath, and Mehrer, P.C. (Syverson) appeals a judgment for the State Auditor. The judgment ruled that NDCC 54–10–14 constitutionally authorized the State Auditor to charge a fee to a public accountant who audits a political subdivision "for the related costs of reviewing the audit report." We affirm.

Until 1967, the State Auditor audited state agencies but not the political subdivisions of the State. NDCC 54–10–01(2). The 1967 North Dakota Legislature directed the State Auditor to audit the political subdivisions, as well, transferring that responsibility from the state examiner of banks. 1967 N.D.Laws ch. 376, §§ 4, 5 and 63 (Repealing NDCC 6–01–21.1.1 to 21.2);

NDCC 54–10–13; 54–10–14. The transfer also authorized a political subdivision to hire a public accountant to conduct the audit, "and then the state auditor is not required to make the examination...." NDCC 54–10–14. The State Auditor must then review the audit report prepared by a public accountant. *Id.* If the report shows irregularities that are not duly corrected, the State Auditor is directed to resume the audit and to charge the political subdivision for the auditing cost. *Id.*

In 1991, the North Dakota Legislature amended NDCC 54–10–14 to allow the State Auditor to charge for the costs of reviewing the report of a public accountant's audit of a political subdivision, as well. 1991 N.D.Laws ch. 576, § 1. The amendment said: "The state auditor may charge the public accountant a fee for the related costs of reviewing the audit report."

The State Auditor established a fee schedule on July 1, 1991, imposing a fee of $300 for each audit review of a county, city, or school district, and a fee of $100 for each audit review of another local governmental unit. The State Auditor arrived at the fees by determining the overall funding needed to support the review section in his agency. The State Auditor took into account office-space rental, employees' salaries, and fringe benefits, as well as an estimate of the number of audits to be reviewed, but he did not make the fee commensurate with the time or effort used for each audit review.

Syverson, an accounting firm engaged in auditing political subdivisions, sued to prohibit the State Auditor from collecting the fee, alleging that the legislature had violated the constitution by granting discretion to the State Auditor to set the fee. Syverson claimed that the audit review fee imposed "an improper and additional tax/fee on local governments or private business," that it was "unreasonable in that it [did] not relate in any rational way to the service provided," and that it was not based on work performed. Syverson sought to enjoin collection of a fee in any amount. The State Auditor answered that the charge

was a fee, not a tax, "not an unconstitutional delegation of the power to legislate," and that the fee was "not arbitrary, unreasonable or unrelated to the service performed."

After a trial, the trial court found that "the fee ... is not a tax, but is a regulatory fee" that is "imposed solely to cover the cost of reviewing audit reports for political subdivisions when these audits are performed by private firms." The trial court concluded that "[t]he fees charged were not arrived at in a reasonable manner, are therefore unreasonable, arbitrary, and unrelated to the actual work performed," but that, "although the specific fee charged is not designated, ... [the statutory authorization] passes constitutional muster." The trial court prohibited the State Auditor "from assessing and/or collecting the fees ... until such time as the [State Auditor] establishes a fee schedule which employs a reasonable relationship to the work performed."

The State Auditor does not appeal the prohibition of the specific fees that he had scheduled, but Syverson appeals from the judgment declaring that the statute "passes constitutional muster." On appeal, Syverson urges that any fee to be determined by the State Auditor would be a tax rather than a regulatory fee. Syverson contends that the "may charge" language gives the State Auditor impermissible discretion in implementing the statute, that the statute is too vague because it does not define "related costs," and that the statute is an unconstitutional delegation of legislative power.

■ We do not view the "may charge" language in the statute as giving the State Auditor impermissible discretion. When the directory word "may" is used in conferring power upon a public officer, and the public or third persons have an interest in the exercise of the power, then the exercise of the power is usually deemed imperative. *See Schwanda v. Bonney,* 418 A.2d 163, 167 (Me.1980); *Independent Bankers Ass'n v. Dunn,* 230 Ga. 345, 197 S.E.2d 129, 138 (1973); *Board of County Comm'rs v. State,* 369 P.2d 537, 542 (Wyo.

1962); *Anthony A. Bianco, Inc. v. Hess*, 86 Ariz. 14, 339 P.2d 1038, 1045 (1959). *See also Solen Public School Dist. No. 3 v. Heisler*, 381 N.W.2d 201, 203 (N.D.1986) ("Mandatory and directory statutes each impose duties, and their difference lies in the consequence of the failure to perform the duty. The mandatory-directory dichotomy relates to whether the failure to perform a duty will invalidate subsequent proceedings."). The State Auditor plans to charge every political subdivision a fee for reviewing an "outside" audit, and he does not assert any power to choose which political subdivisions can be charged for review of an audit.

In the trial court, Syverson argued that the authorized fee was a tax that violated N.D. Const. art. X, §§ 3 and 5, regulating taxes. However, the trial court expressly found that the charge was "a regulatory fee" and "not a tax." In this court, Syverson neither cites nor relies on the constitutional sections regulating taxes. Thus, the question of an invalid tax is not before us. Since the question of legislative delegation applies equally to a tax or to a fee, *Ralston Purina Company v. Hagemeister*, 188 N.W.2d 405, 412 (N.D.1971), we need not decide whether this charge is a tax.

Syverson also contends that the fee charged to a public accountant will be passed on to each political subdivision, paid from local tax revenues, and therefore "becomes a tax on the general public." This argument is farfetched. In *County of Stutsman v. State Historical Society*, 371 N.W.2d 321, 330 (N.D.1985), we said:

> A political subdivision, as an agency of the state in the exercise of governmental powers, generally has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of the State. (Citations omitted) ([M]unicipal corporations have no rights, privileges, or immunities within the protection of the usual constitutional guarantees as against legislative control)....
> If Stutsman County has a serious complaint about the burdens placed upon it ... under the legislative enactment ..., the County must take it to the Legisla-

ture which controls the County's fate in matters such as this.

*See also Municipal Services Corporation v. Kusler*, 490 N.W.2d 700, 703 (N.D.1992) ("If the applicants believe that the measure actually imposes a tax, rather than a fee, their argument should be directed to the political arena of debate among the electorate where the merits of that point can be argued."). If the political subdivisions affected by this fee have complaints about its impact, they must look to the legislature for relief, not to this court.

■ Syverson argues that NDCC 54–10–14, as amended to authorize a fee for the related costs of reviewing a public accountant's audit report of a political subdivision, is a standardless and, therefore, unconstitutional delegation of legislative authority. *See* N.D. Const. art. III, § 1 ("... the legislative power of this state shall be vested in a legislative assembly...."). *See also* N.D. Const. art. XI, § 26 ("The legislative, executive, and judicial branches are co-equal branches of government."). We conclude that this delegation is not unconstitutional.

■ The legislature may delegate power to an executive agency; it is forbidden only from delegating the entire power to legislate. *Southern Valley Grain Dealers v. Board of County Comm'rs*, 257 N.W.2d 425, 434 (N.D.1977). In *Ralston Purina Co. v. Hagemeister*, 188 N.W.2d 405, the Poultry Improvement Act authorized the Poultry Improvement Board to reduce legislatively established license fees, if the Board found the fees to be excessive. Holding that the Act gave the Board authority only to effectuate the statute, not unfettered discretion in fixing fees, we said:

> It obviously would be almost impossible for the Legislature to determine the exact amount of fees necessary to supervise and regulate the various businesses mentioned, and so the Legislature gave to the Poultry Improvement Board the power ... to reduce such fees accordingly. The law does not delegate to the Board the power to enact any legislation as to the maximum fees to be paid, or as

to whom the provisions of the statute shall apply. All that the Legislature has attempted to do is to confer upon the Poultry Improvement Board the power to ascertain, *under the law enacted by the Legislature,* some fact upon which the law, by its own terms, makes its action depend.

*Id.* at 411 (emphasis original). The delegation in this case, too, does not empower the State Auditor to decide who shall pay the audit review fees; the State Auditor can charge only public accountants "a fee for the related costs of reviewing the audit report" of political subdivisions in order to effectuate the statute.

■ The power to ascertain certain facts for operation of a law is not an improper delegation of legislative power. In *Southern Valley Grain Dealers v. Board of County Comm'rs,* 257 N.W.2d 425, we upheld the constitutionality of a statute authorizing a local governing board to grant a temporary tax exemption to a new industry. The statute allowed a board to grant an exemption if it found that the exemption would not "result in unfair tax reduction competition between political subdivisions" and that it was "in the best interest of the people of North Dakota." We concluded that "[w]hile these statements are general, we believe they are no more so than other authorizations which have been upheld." *Id.* at 435. Likewise, this authorization to the State Auditor is neither too general nor too vague to be valid.

■ The delegated power to ascertain facts for operation of a law is not unconstitutional if a reasonable guideline is given. In *County of Stutsman v. State Historical Society,* 371 N.W.2d 321, we considered a statute that authorized the State Historical Board to place sites of "historical value" on the historical registry. Holding the statute to be constitutional, we called this "a reasonably clear guideline and a sufficiently definite standard to pass constitutional muster," being sufficient "to advise ordinary and reasonable people as to its meaning and to limit the Board's discretionary power...." *Id.* at 328–29. In this case, "the related costs of reviewing the

audit report" is a reasonable guideline and a sufficient standard.

In some cases, other safeguards are important. In *Trinity Medical Center v. North Dakota Board of Nursing,* 399 N.W.2d 835 (N.D.1987), the operators of nursing schools sued the Board of Nursing to enjoin enforcement of certain board-promulgated rules for the education of nurses. The Nurse Practices Act authorized the Board of Nursing to establish standards for education of nurses. In reviewing that delegation, we surveyed the constitutionality of legislative delegation of power to administrative agencies. Chief Justice Erickstad extensively discussed the state of the "nondelegation" doctrine, both nationally and in North Dakota, and identified the trio of decisions, *Ralston Purina Co., Southern Valley Grain Dealers,* and *County of Stutsman,* as "indicative of the modern trend." *Trinity* at 844.

We approved Professor Davis's suggestion that "[t]he criterion for determining the validity of a delegation should be the totality of the protection against arbitrariness, not just the one strand having to do with statutory standards," and his assertion that "[w]hat is needed is not simply a substitution of a requirement of safeguards for a requirement of standards but a consideration of both safeguards and standards in order to determine whether the total protection against arbitrary power is adequate." *Trinity* at 844, *quoting* 1 Kenneth Culp Davis, *Administrative Law of the Eighties,* § 3.15 (2d ed. 1978). In *Trinity* at 844, we concluded that "[a]lthough the standards set forth in the Nurse Practices Act ... are broad, they are sufficient when considered with the safeguards" of procedural constraints upon administrative agencies in decisionmaking.

Some of those other safeguards are not present here. NDCC 28–32–01(1)(d) excludes the State Auditor from the Administrative Agencies Practice Act, and hence from the procedures for formal rulemaking. *See* NDCC 28–32–02. Even so, we believe that the legislated guideline of "related costs" protects against an arbitrary

exercise of the power by the State Auditor in setting this fee.

The legislative history of this amendment reveals careful legislative consideration of the fiscal and policy impacts of charging a fee for review of an audit report. Asked about problems with private audits of political subdivisions, Wayne Hokensen, Audit Director of the State Auditor's Office, testified that "we do have some problems very definitely out there." He explained that most political subdivisions "really don't have the expertise that when they receive an audit report whether it was in the right format or not or contained information required by generally accepted accounting principles." The State Auditor opposed the fee, preferring to continue to review the reports as a public service to the state's political subdivisions. Still, he reported to the private accounting firms that "[t]he Legislature ... clearly indicated that the cost of these reviews should be paid by the beneficiaries [political subdivisions]." Thus, the legislature saw a need for the audit reviews, and directed that the related costs should be funded by the public accountants who perform the audits.

We are satisfied that what the legislature has done here is simply to direct the State Auditor to determine the costs related to each audit review and to charge those costs to the public accountant. As with the license fees in *Ralston Purina Co.*, it is impractical for the legislature to determine the costs of each audit review. As illustrated by the unappealed part of the trial court's judgment, voiding a fee that did not comply with the legislated guideline, we find it difficult to conceive of a better standard for exercising a delegated power than "related costs."

We affirm the judgment of the district court.

VANDE WALLE, C.J., LEVINE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.