THOMAS W. SCHEAR (AND 6 OTHERS), PLAINTIFFS-AP-
PELLANTS, v. CITY OF ELIZABETH, *ETC.*, *ET AL.*,
DEFENDANTS-RESPONDENTS.

Argued December 16, 1963—Decided January 20, 1964.

Mr. *Barry R. Mandelbaum* argued the cause for plaintiffs-appellants (*Messrs. Irving & Mandelbaum,* attorneys).

Mr. *John M. Boyle* argued the cause for defendants-respondents (*Mr. John A. Lyons,* on the brief; *Mr. John T. Glennon,* attorney for defendant-respondent City of Elizabeth Redevelopment Agency).

The opinion of the court was delivered by

FRANCIS, J.   Plaintiffs, property owners and taxpayers, instituted this action in lieu of prerogative writ to review a

determination of the Planning Board and the Board of Public Works of the City of Elizabeth that a certain area of the City is a blighted area under *N. J. S. A.* 40:55–21.1 *et seq.* The trial judge found the evidence adequate to support the action of both bodies. Plaintiffs argued further in the Law Division that the blight resolution should be invalidated because of an alleged incompatibility of office arising from the fact that John M. Boyle, a member of the Planning Board, was also City Attorney of Elizabeth. By way of refinement of that argument, they contended the dual office holding operated to prejudice their cause. These claims, too, were decided adversely to plaintiffs. Their appeal to the Appellate Division was certified on our own motion before argument there.

Mr. Boyle was appointed to the Planning Board on January 22, 1957 as a Class IV (citizen) member. *N. J. S. A.* 40:55–1.4. At that time, which was prior to the inception of the present urban renewal project, he held no official position in the City. The first determination of blight was made on June 9, 1959. Boyle joined in the unanimous vote of the Board. On May 6, 1960 he was appointed Second Assistant City Attorney. Thereupon, he was designated as a Class II member of the Board, which class is limited to one of the officials of the municipality to be selected by the mayor. *N. J. S. A.* 40:55–1.4. He has continued as such member to the present time. On July 9, 1959, before the governing body had officially considered the Board's blight declaration, plaintiffs instituted this proceeding attacking the declaration. Later, when the governing body did approve and adopt the determination of blight, the complaint was amended to challenge its validity. On May 8, 1961 the trial court remanded the matter to the Planning Board because of certain deficiencies in its findings. Mr. Boyle became City Attorney on July 10, 1962.

After the remand further investigation was made and additional hearings were held by the Board. A new declaration of blight was issued on November 28, 1962, Mr. Boyle (who

was then Secretary of the Board) voting with the majority. Shortly thereafter, on December 26, 1962, the City Council (the form of government was changed in January 1961 to Mayor-Council Plan F of the Faulkner Act, *N. J. S. A.* 40:69A–1 *et seq.*) approved the determination of blight. Plaintiffs' attack was then renewed in the Law Division, resulting, as has been said, in judgment in favor of the defendants.

On appeal the attack on the blight resolution is based solely on the dual office holding of the City Attorney. Plaintiffs say his duty as a member of the Planning Board was to participate fully and fairly in the preliminary investigation and determination of the blight problem. That duty, they charge, was inconsistent with his obligation as City Attorney to furnish independent and impartial advice, either voluntarily or on request, in aid of the required independent determination of the City Council as to the legal propriety of the application of the Blighted Area Act to the locality involved, the propriety of the proceedings before the Planning Board, and whether the act was being followed in proper procedural and substantive fashion by the City Council. They argue also that they were prejudiced because the City Attorney was not only a member of the Planning Board, but its Secretary and Attorney as well. The allegation that Mr. Boyle was attorney for the Board may be disposed of summarily. The trial court found no adequate factual support for the statement and our examination of the record has revealed no ground for appellate interference with his finding.

The charge that Mr. Boyle should not have participated in the proceedings before the Planning Board or the governing body because of his alleged incompatible office holding was never asserted before either body. Nor was it set forth in any of the pleadings in the case. As far as can be gleaned from the record, it was presented for the first time in the Law Division. In our judgment the public interest demands that such objections be made known to the agencies of government involved at the earliest possible date. In that way opportunity

is given, before substantial time and public funds are expended, to consider the existence of any conflict of duty or possible conflict of interests, and whether the dual officeholder should withdraw from the proceedings. It is not necessary in the present case to decide whether such belated objection should be barred. The defendants seek a decision on the merits and we agree the ends of justice will be served by doing so.

The doctrine that a person cannot hold two incompatible public offices is a development of the common law. Incompatibility exists when there is a conflict or inconsistency in the functions of the two offices, *i. e.*, where "one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another." *Reilly v. Ozzard,* 33 *N. J.* 529, 543 (1960) ; *Ahto v. Weaver,* 39 *N. J.* 418, 422 (1963) ; "Conflict of Interests: State Government Employees," 47 *Va. L. Rev.* 1034, 1071–1076 (1961). But, as we said in the cases cited, application of the common law in this field, within constitutional limitations, is largely subject to legislative policy. If the lawmakers, acting within those limits as the "architect[s] of the structure of government," ordain that one person may or may not hold two public offices, the judiciary cannot interfere. *Reilly v. Ozzard, supra,* 33 *N. J.,* at *p.* 550 ; *Ahto v. Weaver, supra* (39 *N. J.,* at *p.* 423).

The Legislature has prescribed the composition of the Planning Board. *L.* 1953, *c.* 433, § 4. *N. J. S. A.* 40 :55–1.4 provides :

"The governing body may by ordinance create a planning board of not less than five nor more than nine members. The members shall consist of, and be divided into, for convenience in designating the manner of appointment, the four following classes :
Class I—mayor.
Class II—one of the officials of the municipality to be appointed by the mayor.
Class III—a member of the governing body to be appointed by it.
Class IV—other citizens of the municipality to be appointed by the mayor."

Attention is drawn immediately to the fact that the Legislature contemplated and directed certain common membership in the board and the governing body. In a seven-man board, such as exists in Elizabeth, the command is for appointment of three members of the official family, two from the governing body (which frequently is called upon to approve or disapprove actions of the board) and one local public official outside the governing body. Obviously, therefore, the Legislature considered and intended that the governing body and the planning board would pursue common public interests in the municipal planning field to the extent that it has been committed to the planning board. It follows naturally, also, that membership in both public bodies cannot be deemed inherently incompatible within the ambit of the common law doctrine.

Further language of the statute emphasizes the legislative awareness of the dual capacity membership which was being approved, and of the need for some independent citizen membership. It was decreed that "the members of Class IV shall hold no other municipal office, except that one of such members may be a member of the zoning board of adjustment and one may be a member of the board of education." *N. J. S. A.* 40:55-1.4. Authorization to appoint a member of the zoning board of adjustment is additional recognition of the common interests in local planning centered particularly in the governing body, the planning board and the zoning board of adjustment.

In the present case relating the statute to the controversy, we note that a municipal attorney holds a public office. *Reilly v. Ozzard, supra,* 33 *N. J.,* at *p.* 541. He is an official of the municipality and therefore qualified for appointment to the planning board. The Legislature is presumed to be aware of this status and consequently to have sanctioned such membership on the board. *Clifton v. Zweir,* 36 *N. J.* 309, 323, 324 (1962); *State v. Federanko,* 26 *N. J.* 119, 129 (1958).

The Blighted Area Act was adopted in 1949. *L.* 1949, *c.* 187, *N. J. S. A.* 40:55-21.1. Among other things, it says

"[t]he governing body of any municipality, by resolution, may provide for a preliminary investigation of any area in the municipality to determine whether such area is, or is not, a blighted area, as defined in this act." *N. J. S. A.* 40:55–21.2. Further, it says:

"* * * If the municipality has a planning board created by ordinance, pursuant to the provisions of article one of chapter fifty-five of Title 40 of the Revised Statutes [which is the situation in the City of Elizabeth], the said resolution *shall* provide that the matter of such preliminary investigation *shall* be referred to the said planning board, * * *." *Id.* (Insertion and emphasis added)

Thus, when the statute prescribing the composition of planning boards was adopted in 1953, the Legislature, although aware membership thereon for municipal attorneys had been authorized, imperatively directed reference to the planning board of a resolution of the governing body for a preliminary investigation of the question of blight of the described area. In view of the described statutory scheme envisioned and promulgated by the Legislature for the creation of planning boards and determination of the blight problem, we can find no justification for holding as a matter of law that such an inherent conflict of duty exists between dual occupation of membership on a planning board and the office of municipal attorney as to invalidate the resolution of blight adopted by the City Council.

In such cases as this, the distinction between duties associated with incompatible offices and the duty that may arise when a holder of two not incompatible offices is confronted with a conflict of interests is always a matter for consideration. As the Chief Justice pointed out in *Reilly*, "[i]n the former, a clash of *duties* inheres in the very relationship of one office to the other and is contemplated by the scheme of governmental activities" (33 *N. J.*, at *p.* 549); in the latter the conflict does not arise from the inescapable clash of duties which are organic attributes of each office but rather out of a conflict emanating from external temporary circumstances involving a personal or pecuniary interest of the officeholder,

or divided loyalties between the two offices. Such conflicts may be regarded as peculiar operational incidents of the duality of the office holding. Where a conflict of interests arises, the dual officeholder is disqualified to act in the particular matter and must withdraw from the scene. No other choice is open to him. See *Reilly v. Ozzard, supra,* 33 *N. J.,* at *pp.* 548–550.

■ In providing for establishment of planning boards, the Legislature appears to have been aware not only of the subject of conflict of duty associated with dual office holding in some areas of government, but to have been conscious also of the incidental problem of possible conflict of interests. This is clearly evidenced by its inclusion in the statute of the general mandate that:

"No member of the planning board shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest." *N. J. S. A.* 40:55–1.4.

The injunction, which applies to all members of the board, irrespective of dual office holding, simply gives recognition to the universal moral rule that no man can serve two masters. It must be applied to the facts of a particular case with a sensitive regard for the public interest. *Van Itallie v. Franklin Lakes,* 28 *N. J.* 258 (1958) ; *Aldom v. Borough of Roseland,* 42 *N. J. Super.* 495 *(App. Div.* 1956) ; *Zell v. Borough of Roseland,* 42 *N. J. Super.* 75 *(App. Div.* 1956).

■■ Determination of existence of a conflict of interests in a given situation under our tripartite form of government is within the competence of the judiciary. And when found to exist (even in the absence of the statutory provision cited above), adjudication of the invalidity of the challenged official act would follow. Moreover, where the dual office holding is by a member of the bar whose conduct is subject to the Canons of Ethics and supervision of the Supreme Court, and performance of the duties of one office calls for services as an attorney, possible areas of conflict of interests are subjected to even closer scrutiny and more stringent limitation. As was

said by Justice Hall in *Ahto v. Weaver,* "[w]here the public interest is involved, he may not represent conflicting interests even with consent of all concerned." 39 *N. J.,* at *p.* 431.

In the present case presumably because of apprehension of some possible claim of conflict of interests, Mr. Boyle, after participating in the Planning Board proceedings, gave no legal advice to the governing body about the matter. The City Council did not seek his opinion of the legality of the Board's action, or its finding of blight, and he did not offer it. Further, his advice was not sought as to the nature of, or the manner of handling the Council proceedings, or the conditions which had to be met to warrant "approval, disapproval, or modification" of the determination of the Board. See *N. J. S. A.* 40:55–21.9. The trial court found no conflict of interests either under the restrictive provision of the statute or the common law, arising out of the circumstances of the case or the course of conduct pursued by Mr. Boyle. In addition, he declared the plaintiffs suffered no prejudice as the result of Boyle's dual office holding or his participation in the proceedings. Our study of the record has led us to agree with that conclusion.

For the reasons outlined, the judgment is affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.