# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2021 ND 87

State of North Dakota,                                    Plaintiff and Appellee

v.

Kari Leanne Riggin,                                   Defendant and Appellant

### No. 20200293

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Ethan R. Lee, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Lynn M. Boughey, Mandan, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1] Kari Leanne Riggin appeals from a criminal judgment entered after she conditionally pled guilty to a violation of Executive Order 2020-06, an infraction. Riggin challenges the Governor's authority to restrict her ability to engage in cosmetology services within an assisted living facility as part of the State's response to a declared state of emergency. We affirm.

I

[¶2] On March 13, 2020, Governor Doug Burgum declared a state of emergency and activated the North Dakota State Emergency Operations Plan via Executive Order ("E.O.") 2020-03. Governor Burgum's declaration of a state emergency was in response to the public health crisis resulting from the novel coronavirus ("COVID-19").

[¶3] Following the declaration of a state of emergency, Governor Burgum issued a number of executive orders intended to control and prevent the spread of COVID-19. On March 19, 2020, Governor Burgum issued E.O. 2020-06 which closed certain business establishments in North Dakota, limited physical access to other business establishments in North Dakota, directed state agencies and offices to regulate staffing, and limited access to the North Dakota State Capitol by appointment only. These restrictions were set to expire on April 6, 2020. On March 27, 2020, E.O. 2020-06 was amended as E.O. 2020-06.1 to include the closure of salons and ordering licensed cosmetologists to cease operations. On April 1, 2020, Governor Burgum issued E.O. 2020-06.2 which extended the previous orders to April 20, 2020.

[¶4] On April 14, 2020, law enforcement received a report that Kari Riggin, a licensed cosmetologist, was operating a hair salon at Somerset Court, an assisted living facility, in Minot, North Dakota. Riggin was alleged to be in violation of E.O. 2020-06.2 by providing cosmetology services. When officers arrived at the facility, Riggin was providing a cosmetology service to a client and admitted to performing cosmetology services at that location subsequent

to the issuance of E.O. 2020-06.2. Riggin was cited and charged with violation of a governor's declaration, in violation of N.D.C.C. § 37-17.1-05, an infraction.

[¶5] The district court denied Riggin's motion to dismiss the citation after finding the governor holds the sole responsibility for managing disasters and emergencies, and the governor's means of managing an emergency is through the use of an executive order. Following the denial of her motion to dismiss, Riggin entered a conditional guilty plea reserving her right to appeal.

## II

[¶6] On appeal, Riggin challenges the governor's executive order as it pertains to closing the salon at Somerset Court and preventing Riggin from performing cosmetology services. First, Riggin argues the governor exceeded the statutory authority delegated to him through N.D.C.C. ch. 37-17.1. Second, Riggin argues E.O. 2020-06.2 was unconstitutional because it restricted her right to conduct business, engage in employment, and earn a living. Third, Riggin contends the executive order is unconstitutionally vague and overbroad. Finally, Riggin argues the executive order is unconstitutional because it violates the separation of powers required between the legislative branch and the executive branch.

[¶7] Riggin's challenges either require this Court to interpret statutory language or are contentions her constitutional rights have been violated. "This Court reviews the district court's interpretation of a statute de novo." *Matter of Gomez*, 2018 ND 16, ¶ 11, 906 N.W.2d 87. This Court reviews "claims that a defendant's constitutional rights were violated de novo." *Truelove v. State*, 2020 ND 142, ¶ 8, 945 N.W.2d 272.

## III

[¶8] Riggin argues E.O. 2020-06.2 exceeded the governor's statutory authority because a plain reading of N.D.C.C § 37-17.1-05 does not permit the governor to enact "laws through executive order, only suspend them." Riggin does not argue the statute is ambiguous.

[¶9] Our Constitution vests our governor with "executive power" and responsibility to see the state's laws are "faithfully executed." N.D. Const. art. V, §§ 1 and 7. As the state's executive officer, the legislature has provided the governor with emergency management powers under the North Dakota Disaster Act of 1985 ("the Act") which establishes the framework for management of disasters and emergencies in North Dakota. N.D.C.C. ch. 37-17.1.

[¶10] Section 37-17.1-05, N.D.C.C., entitled "The governor and disasters or emergencies—Penalty," clarifies the nature of the governor's powers and responsibilities in disaster situations. The governor is responsible for minimizing or averting the adverse effects of a disaster or emergency. N.D.C.C. § 37-17.1-05(1). The governor may, by proclamation or executive order, declare a state of disaster or emergency upon finding a disaster has occurred or a state of emergency exists. N.D.C.C. § 37-17.1-05(2) and (3). The state of emergency continues until the governor finds the threat or danger has passed or the emergency conditions no longer exist. N.D.C.C. § 37-17.1-05(3).

[¶11] Upon the declaration of a state of emergency, the Act vests with the governor emergency management powers, including the following:

> Suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders, rules, or regulations of any state agency, if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in managing a disaster or emergency.
>
> .     .     .
>
> Control ingress and egress in a designated disaster or emergency area, the movement of persons within the area, and the occupancy of premises therein.

N.D.C.C. § 37-17.1-05(6)(a) and (g). As a counterbalance to the exercise of the governor's powers under the Act, the legislative assembly may terminate a state of disaster or emergency at any time. N.D.C.C. § 37-17.1-05(3).

[¶12] The Act applies to "disasters" and "emergencies." A "disaster" is defined as "the occurrence of widespread or severe damage, injury, or loss of life or property resulting from any natural or manmade cause, including […] epidemic." N.D.C.C. § 37-17.1-04(2). An "emergency" is defined as "any situation that is determined by the governor to require state or state and federal response or mitigation actions to protect lives and property, to provide for public health and safety, or to avert or lessen the threat of a disaster." N.D.C.C. § 37-17.1-04(4).

[¶13] COVID-19 created circumstances falling within the statutory definitions of both a disaster and an emergency. The legislature expressly included within the definition of disaster an epidemic, which includes COVID-19. The legislature expressly delegated to the governor the power to determine whether the situation was an emergency requiring "state or state and federal response . . . ." Finally, the legislature included within the delegation of authority the ability of the governor to "[c]ontrol ingress and egress in a designated disaster or emergency area, the movement of persons within the area, and the occupancy of premises therein." We conclude E.O. 2020-06.2 did not exceed the statutory authority provided to the governor under N.D.C.C. § 37-17.1-05 as it relates to the closure of salons and ordering licensed cosmetologists to cease operations.

IV

[¶14] Riggin argues E.O. 2020-06.2 was unconstitutional because it restricted her right to conduct business, engage in employment, and earn a living. The powers to declare a state of emergency and control ingress and egress delegated to the governor under the Act are grounded in the state's inherent police powers. *See State v. Cromwell*, 9 N.W.2d 914 (N.D. 1943). In exploring the boundaries of the state's police power this Court has recognized the following:

> The term 'police power', as understood in American constitutional law, means simply the power to impose such restrictions upon private rights as are practically necessary for the general welfare of all. And it must be confined to such restrictions and burdens as are thus necessary to promote the public welfare, or in other words,

4

to prevent the infliction of public injury. . . . The development of the law relating to the proper exercise of the police power of the state clearly demonstrates that it is very broad and comprehensive, and is exercised to promote the general welfare of the state, as well as its health and comfort. And the limit of this power cannot and never will be accurately defined, and the courts have never been willing, if able, to circumscribe it with any definiteness. And this court, considering the police power, has said that it is the power inherent in every sovereignty, the power to govern men and things, under which power, the legislature may, within constitutional limitations, not only prohibit all things hurtful to the comfort, safety, and welfare of society, but prescribe regulations to promote the public health, morals, and safety and add to the general public convenience, prosperity, and welfare.

*Id.* at 575-76 (internal citations and quotation marks omitted).

[¶15] Riggin's challenge to the restriction on her business is separated into two arguments within her briefing. First, Riggin argues that this Court should apply strict scrutiny to the restrictions imposed by E.O. 2020-06.2. Second, she argues E.O. 2020-06.2 violates article I, sections 1 and 7, of the North Dakota Constitution.

[¶16] Riggin contends this Court should apply strict scrutiny to the restrictions imposed by E.O. 2020-06.2. Other than providing an argument as to why strict scrutiny should apply, Riggin offers no supporting argument regarding why or how this Court should find the executive order to be unconstitutional, even if we were to apply strict scrutiny. "Where a party fails to provide supporting argument for an issue listed in his brief, he is deemed to have waived that issue." *State v. Obrigewitch*, 356 N.W.2d 105, 109 (N.D. 1984). We decline to address the issue as raised by Riggin because it has not been adequately supported by argument.

[¶17] Riggin also contends the restrictions on her employment violate article I, sections 1 and 7, of the North Dakota Constitution. Again, Riggin offers no supporting argument regarding why or how this Court should find E.O. 2020-06.2 violates article I, sections 1 and 7, of the North Dakota Constitution. Her entire argument is limited to the following sentence containing a partial

5

quotation of section 7, "Riggin should be 'free to obtain employment wherever possible' and this right was infringed by the issuance of the Governor's executive orders."

[¶18] In the context of the property rights enumerated in article I, this Court has previously recognized that those rights are subject to the state's police powers. *Cont'l Res., Inc. v. Farrar Oil Co.*, 1997 ND 31, ¶ 15, 559 N.W.2d 841. Riggin offers no explanation of why her right to employment as enumerated in section 7 is free from regulation through the state's police powers while other enumerated rights within article I have previously been determined to be subject to the state's police powers.

[¶19] This Court has previously interpreted the language of section 7 quoted by Riggin as addressing the relationship between employees and employers, and unions. *Minor v. Bldg. & Const. Trades Council*, 75 N.W.2d 139, 149 (N.D. 1956). Section 7, in its entirety, reads as follows:

> Section 7. Every citizen of this state shall be free to obtain employment wherever possible, and any person, corporation, or agent thereof, maliciously interfering or hindering in any way, any citizen from obtaining or enjoying employment already obtained, from any other corporation or person, shall be deemed guilty of a misdemeanor.

N.D. Const. art. I, § 7.

[¶20] Riggin offers no argument why this Court should extend our prior application of section 7 related to employers, employees, and unions, to the facts of this case. "Where a party fails to provide supporting argument for an issue listed in his brief, he is deemed to have waived that issue." *Obrigewitch*, 356 N.W.2d at 109. We decline to address the issue as raised by Riggin because it has not been adequately supported by argument.

V

[¶21] Riggin argues E.O. 2020-06.2 is unconstitutionally vague and overbroad. While she fails to articulate whether her challenge to the executive order is "as applied" or a facial challenge, it appears Riggin argues the executive order is

unconstitutional as applied to her and the facts of this case. She also makes a cursory assertion the criminal penalties imposed for a violation of an executive order may be unconstitutionally vague and overbroad.

[¶22] Riggin's only support for her assertion the statute is vague or overly broad is a reference to a memorandum issued by the North Dakota Legislative Council. Riggin's reliance on the memorandum of North Dakota's Legislative Council is misplaced.

[¶23] First, determination of whether E.O. 2020-06.2 is overly broad or vague falls to the judicial branch, not the legislative branch. Executive orders issued under Chapter 37-17.1 have the force of law, and a violation of E.O. 2020-06.2 is an infraction subject to a $1,000 fine. It is the duty of this Court to interpret the law. *See Bruner v. Hager*, 547 N.W.2d 551, 552 n.1 (N.D. 1996) ("It is the legislature's duty to make laws, and this court's duty to interpret the laws as written."). While we are respectful of the Legislative Council's analysis, the legislature has not chosen to intervene in this case, and it is this Court's duty to determine the constitutionality of the executive order.

[¶24] Second, the memorandum from Legislative Council does not support Riggin's argument. The discussion in the memorandum is limited to the issue of vagueness and consists of two paragraphs. The initial paragraph references only E.O. 2020-06.4, and provides general principles of law without application to any of the executive orders. The second paragraph discusses vagueness in a single circumstance, the application of ND Smart Restart protocols as they relate to "standing in bars." The paragraph is devoid of any references applicable to the facts of this case. The memorandum, even if this Court were to consider it as persuasive authority, does not address the issues in this case.

[¶25] Riggin fails to support her argument that E.O. 2020-06.2 is overly broad or vague except for a general reference to a non-binding Legislative Council memorandum that does not include any analysis to the facts presented in this case. "Where a party fails to provide supporting argument for an issue listed in his brief, he is deemed to have waived that issue." *Obrigewitch*, 356 N.W.2d at 109. We decline to address the challenge asserting the executive order is

7

overly broad and vague as raised by Riggin because it has not been adequately supported by argument.

VI

[¶26] Riggin contends E.O. 2020-06.2 is unconstitutional because it violates the separation of powers required between the legislative branch and the executive branch through an improper delegation of power from the legislature to the governor. The primary support for her argument is a reference to the memorandum of the North Dakota Legislative Council.

[¶27] As noted above, we are not bound by the opinion of Legislative Council. Nonetheless, we have reviewed the memorandum referenced by Riggin and we can discern no discussion within the memorandum indicating that Legislative Council is of the opinion that the legislature violated the separation of powers doctrine through the enactment of N.D.C.C. ch. 37-17.1.

[¶28] "Whether and in what manner a business shall be regulated are matters of policy for the legislative department of government to determine." *Cromwell*, 9 N.W.2d at 920. "Except as otherwise provided in the constitution, the Legislature may not delegate legislative powers to others . . . ." *Kelsh v. Jaeger*, 2002 ND 53, ¶ 21, 641 N.W.2d 100. "However, the Legislature may delegate powers which are not exclusively legislative and which the Legislature cannot conveniently do because of the detailed nature." *Stutsman Cty. v. State Historical Soc'y of N.D.*, 371 N.W.2d 321, 327 (N.D. 1985)

[¶29] When determining whether there has been a proper delegation of power from the legislature to the executive branch, this Court has recognized that the "distinction between a delegable and non-delegable power was whether the power granted gives the authority to make a law or whether that power pertains only to the execution of a law which was enacted by the Legislature." *Stutsman Cty.,* 371 N.W.2d at 327 (citing *Ralston Purina Co. v. Hagemeister*, 188 N.W.2d 405 (N.D. 1971)). "The power to ascertain certain facts which will bring the provisions of a law into operation by its own terms is not an unconstitutional delegation of legislative powers." *Id.* (citing *Ferch v. Housing Auth. of Cass Cty.*, 79 N.D. 764, 59 N.W.2d 849 (1953)).

[¶30] This Court has upheld delegations of power when the law contains reasonable guidelines for how the delegated power is to be implemented. *Kelsh*, 2002 ND 53, ¶ 21 (citing *MCI Telecomms. Corp. v. Heitkamp*, 523 N.W.2d 548, 555 (N.D. 1994); *N.D. Council of Sch. Adm'rs v. Sinner*, 458 N.W.2d 280, 285–86 (N.D. 1990); *S. Valley Grain Dealers Ass'n v. Bd. of Cty. Comm'rs*, 257 N.W.2d 425, 435 (N.D. 1977)). "When reasonable guidelines are given, the delegated power to ascertain facts for operation of a law is not unconstitutional because that power pertains to execution of the law." *Id.* (citing *Syverson, Rath and Mehrer, P.C. v. Peterson*, 495 N.W.2d 79, 82 (N.D. 1993)).

[¶31] Chapter 37-17.1 begins with a detailed statement of the purpose of the legislation. N.D.C.C. § 37-17.1-02. The legislation defines emergencies and disasters with specificity. N.D.C.C. § 37-17.1-04(2) and (4). It provides guidelines for how the governor may declare a disaster or emergency and reserves with the legislature the power to terminate the disaster or emergency "at any time." N.D.C.C. § 37-17.1-05(3). The legislature has enumerated the specific powers delegated to the governor through the legislation. N.D.C.C. § 37-17.1-05(6). The legislature also defined the limitations to the delegation of power to the governor. N.D.C.C. § 37-17.1-03. Finally, the legislature has set the penalty for a violation of an executive order issued during a declared disaster or emergency. N.D.C.C. § 37-17.1-05(7).

[¶32] Chapter 37-17.1, N.D.C.C., has a stated purpose of providing to the governor the ability to respond to unanticipated events requiring a rapid and orderly response. The legislature has provided detailed guidelines as to how the emergency power is to be implemented by the governor and defined the limits of the delegated power. The legislature has reserved the right to terminate the delegation of power. We conclude N.D.C.C. ch. 37-17.1 provides sufficient guidelines for how the delegated power is to be implemented and is not an impermissible delegation of power between the legislative and executive branches.

[¶33] In addition to concluding the legislature's enactment of N.D.C.C. ch. 37-17.1 was proper delegation of power to the executive branch, we have also considered whether or not the separation of powers was violated through the

9

issuance of an executive order exceeding the delegated authority. As we concluded in section III above, E.O. 2020-06.2 did not exceed the authority delegated to the governor.

## VII

[¶34] We conclude the governor did not exceed the statutory authority delegated to him through N.D.C.C. ch. 37-17.1. Riggin failed to adequately support her challenge E.O. 2020-06.2 was unconstitutional because it restricted her right to conduct business, engage in employment, and failed to adequately support her contention the executive order and the criminal penalties imposed for a violation of an executive order are unconstitutionally vague and overbroad. We further conclude N.D.C.C. ch. 37-17.1 properly delegates police power related to disasters and emergencies and does not violate the separation of powers required between the legislative branch and the executive branch. We affirm the judgment.

[¶35]  Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers
     Lisa Fair McEvers
     M. Jason McCarthy, D.J.

[¶36] The Honorable M. Jason McCarthy, D.J., sitting in place of Tufte, J., disqualified.