# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 228

Kyle Patrick Wardner,  Plaintiff and Appellant

v.

Rebecca Rose Porath,
Duane Anthony Porath,
and Patricia Rose Porath,  Defendants and Appellees

## No. 20250256

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable David E. Reich, Judge.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Opinion of the Court by Bahr, Justice.

William C. Black, Bismarck, ND, for plaintiff and appellant.

Patrick W. Waters, Bismarck, ND, for defendants and appellees.

**Wardner v. Porath, et al.**
**No. 20250256**

**Bahr, Justice.**

[¶1]   Kyle Wardner appeals from a district court's order denying his motion to modify a foreign visitation order. We reverse and remand with instructions.

I

[¶2]   Wardner and Tamara Porath are the parents of E.M.M.W., born in 2017. At the time of E.M.M.W.'s birth, Wardner and Tamara Porath were in a long-distance relationship between North Dakota, where Wardner resided, and Canada, where Tamara Porath resided. Tamara Porath lived with her parents, Duane and Patricia Porath, and her sister, Rebecca Porath (collectively "the Poraths"). After E.M.M.W.'s birth, Tamara Porath would bring E.M.M.W. to North Dakota to visit, and occasionally Wardner would go to Canada. Wardner and Tamara Porath were never married, and in November 2020, Tamara Porath passed away.

[¶3]   Following Tamara Porath's death, Rebecca Porath filed an application to become E.M.M.W.'s legal guardian. Wardner opposed the application. In August 2021, the Canadian court entered an interim order. The interim order awarded Wardner primary residential responsibility, and E.M.M.W. came to live with Wardner in North Dakota. In May 2022, Wardner and Rebecca Porath stipulated to the Canadian court entering a final order addressing parenting time and the Poraths' visitation time with E.M.M.W. Wardner registered and filed the order with the district court in May 2024.

[¶4]   In June 2024, Wardner moved the district court to modify the Canadian order. The court held a hearing in January 2025. Wardner and the Poraths testified at the hearing. The court denied Wardner's motion, finding Wardner failed to demonstrate a material change in circumstances has occurred.

II

[¶5] The Poraths argue the district court lacked jurisdiction to modify the Canadian order. Although they concede North Dakota is E.M.M.W.'s home state, they argue the court did not make sufficient findings to determine it had jurisdiction. They acknowledge they are making a "technical," perhaps even "hyper-technical," argument.

[¶6] The district court determined it had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at N.D.C.C. ch. 14-14.1. Our review of a court's conclusion it has jurisdiction is well-established:

> When the jurisdictional facts are not in dispute, we review the district court's decision on subject-matter jurisdiction de novo. If the underlying jurisdictional facts are disputed, this Court is presented with a mixed question of law and fact, and we review the question of law de novo and the district court's findings of fact under the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court believes a mistake has been made.

*Trenton Indian Housing Auth. v. Poitra*, 2022 ND 87, ¶ 6, 972 N.W.2d 419 (quoting *Gustafson v. Poitra*, 2018 ND 202, ¶ 6, 916 N.W.2d 804).

[¶7] The UCCJEA provides "[a] court of this state shall treat a foreign country as if it were a state for the purpose of applying sections 14-14.1-01 through 14-14.1-21." N.D.C.C. § 14-14.1-04(1); *see also* N.D.C.C. § 14-14.1-01(15) (defining "State"). The final order was issued by a Canadian court and later registered in North Dakota. Under section 14-14.1-04(1), the Canadian order must be treated as an out-of-state order under the UCCJEA.

[¶8] Under the UCCJEA, "Child custody determination" means "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or *visitation* with respect to a child." N.D.C.C. § 14-14.1-01(2) (emphasis added). The Canadian final order grants the Poraths visitation with E.M.M.W. It is therefore a child custody determination under section 14-14.1-01(2). Thus,

2

Canada is the "issuing state" for purposes of the UCCJEA. *See* N.D.C.C. § 14-14.1-01(9) (stating "'Issuing state' means the state in which a child custody determination is made.").

[¶9] Section 14-14.1-14, N.D.C.C., governs when a North Dakota court may modify a child custody determination made by another state. A North Dakota court may modify a child custody determination made by another state if (1) the court has jurisdiction to make an initial custody determination under N.D.C.C. § 14-14.1-12(1)(a) or (b) and (2) a court of either state "determines that the child, the child's parents, and any person acting as a parent do not presently reside" in the issuing state. N.D.C.C. § 14-14.1-14(2).

[¶10] Under N.D.C.C. § 14-14.1-12(1)(a), a court has jurisdiction to make an initial custody determination when North Dakota is the child's "home state" on the date the proceeding is commenced. Section 14-14.1-01(6), N.D.C.C., defines "Home state" to mean "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." During the hearing, the district court stated, "Child and the biological father live in McLean County." The court also found, "Since August of 2021 Kyle has been the primary caregiver for [E.M.M.W.], who has resided exclusively in North Dakota during that time." In its order, the court found, "In an interim order entered August 24, 2021, the Canadian court awarded interim custody, or primary residential responsibility, to [Wardner] and E.M.M.W. came to live with him in North Dakota at that time." The court specifically found "E.M.M.W. has resided in the United States since August 2021." Although the court did not specifically hold North Dakota is E.M.M.W.'s "home state," the court's findings establish North Dakota is E.M.M.W.'s home state as defined in section 14-14.1-01(6). The court's findings satisfy the requirement of 14-14.1-12(1)(a).

[¶11] Regarding the requirement of N.D.C.C. § 14-14.1-14(2) that the child, the child's parents, and any person acting as the child's parent does not presently reside in the other state, the district court found E.M.M.W. and Wardner reside in North Dakota and that E.M.M.W.'s biological mother is deceased. The court further found the Poraths live in Canada and E.M.M.W. visits them there. Under

N.D.C.C. § 14-14.1-01(11), a "Person acting as a parent" must (1) have had physical custody of the child for six consecutive months within the preceding year, and (2) have been awarded legal custody or claim a right to legal custody. The Poraths meet neither criterion; they have not had six consecutive months of custody of E.M.M.W., nor have they been awarded or claim legal custody of E.M.M.W. Thus, the Poraths do not qualify as persons acting as parents under the UCCJEA, meaning the statutory requirement of section 14-14.1-14(2) is met.

[¶12] The district court had jurisdiction under N.D.C.C. § 14-14.1-12 to modify the child custody determination.

III

[¶13] The district court held N.D.C.C. § 14-09-06.6 applies to Wardner's motion. Wardner argues the court erred by applying section 14-09-06.6. He argues the court should have applied N.D.C.C. ch. 14-09.4, the Uniform Nonparent Custody and Visitation Act. The Poraths agree the court erred in applying section 14-09-06.6. They argue the court should have applied the UCCJEA.

[¶14] "This Court reviews the district court's interpretation of a statute de novo." *State v. Berkley*, 2025 ND 134, ¶ 5, 24 N.W.3d 69 (quoting *State v. Riggin*, 2021 ND 87, ¶ 7, 959 N.W.2d 855). Under standard principles of statutory interpretation, courts "interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage." *Id.* (quoting *State v. Enriquez*, 2024 ND 164, ¶ 17, 10 N.W.3d 777).

A

[¶15] Section 14-09-06.6, N.D.C.C., provides when a motion to modify primary residential responsibility may be made and when the court may modify primary residential responsibility. "'Primary residential responsibility' means a parent with more than fifty percent of the residential responsibility." N.D.C.C. § 14-09-00.1(7). Here, Wardner was not attempting to change which party had primary residential responsibility for E.M.M.W. Rather, Wardner, who already had primary residential responsibility, sought to modify the Poraths' visitation

4

schedule. As acknowledged by the Poraths, section 14-09-06.6 "concerns modification of residential responsibility; however, at most, this case was about modification of parenting time."

[¶16] The district court erred by determining Wardner's motion under N.D.C.C. § 14-09-06.6.

B

[¶17] The Poraths argue the district court should have applied N.D.C.C. ch. 14-14.1 to Wardner's motion.

[¶18] It is difficult to understand the Poraths' argument the district court should have applied N.D.C.C. ch. 14-14.1. Courts apply chapter 14-14.1 to determine and resolve jurisdictional issues; chapter 14-14.1 does not provide the substantive law to determine whether to modify a visitation order. Section 14-14.1-26(2), cited by the Poraths, provides a North Dakota court "shall recognize and enforce, but may not modify, except in accordance with sections 14-14.1-12 through 14-14.1-21, a registered child custody determination of a court of another state." Under section 14-14.1-26(2), the district court has jurisdiction to modify the Canadian court's final order "in accordance with sections 14-14.1-12 through 14-14.1-21[.]" As previously discussed, the court exercised jurisdiction under N.D.C.C. §§ 14-14.1-12 and 14-14.1-14. Thus, the court did apply chapter 14-14.1 to determine its jurisdiction to address Wardner's motion. It properly did not apply chapter 14-14.1 to resolve Wardner's motion.

C

[¶19] The district court held N.D.C.C. ch. 14-09.4 does not apply to Wardner's motion because N.D.C.C. § 14-09.4-02(1) provides "this chapter applies to a proceeding in which a nonparent seeks custody or visitation." Because the Canadian final order established the Poraths' visitation rights, and the Poraths were not seeking visitation rights at this time, the court concluded, "Under the plain language of N.D.C.C. § 14-09.4-02(1), the Uniform Nonparent Custody and Visitation Act does not apply to these proceedings."

5

[¶20] The district court did not cite to or consider N.D.C.C. § 14-09.4-14. Neither party brought N.D.C.C. § 14-09.4-14 to the district court's attention or argued its application on appeal. Although the parties have the primary duty to bring to this Court's attention the applicable law, it is "not only our authority, but our duty to decide the applicability of relevant statutes to legal controversies whether or not the parties have pointed us to them or argued a particular construction." *State v. Holecek*, 545 N.W.2d 800, 804 (N.D. 1996); *see also Edison v. Edison*, 2023 ND 141, ¶ 34, 994 N.W.2d 151 ("This Court frequently considers legal authority identified during its own research—we are not limited to the arguments or authorities cited by the parties.").

[¶21] Section 14-09.4-14 provides, on motion, "the court may *modify* a final custody or visitation order" if certain conditions are met. (Emphasis added.) The Canadian order is a final visitation order. *See* N.D.C.C. § 14-09.4-01(14) ("'Visitation' means the right to spend time, which may include an overnight stay, with a child who is living with another person."). The Poraths are nonparents. *See* N.D.C.C. § 14-09.4-01(7) ("'Nonparent' means an individual other than a parent of the child, including a grandparent, sibling, or stepparent of the child."). Thus, section 14-09.4-14 applies to Wardner's motion to modify the Poraths' visitation with E.M.M.W.

[¶22] The district court's interpretation N.D.C.C. ch. 14-09.4 only applies when a nonparent "seeks" custody or visitation renders N.D.C.C. § 14-09.4-14 superfluous. *S.E.L. v. J.A.P.*, 2019 ND 16, ¶ 11, 921 N.W.2d 640 ("Statutes are interpreted to give effect to all of their provisions, and no part of the statute is rendered inoperative or superfluous." (quoting *Altru Specialty Servs., Inc. v. N.D. Dep't of Human Servs.*, 2017 ND 270, ¶ 10, 903 N.W.2d 721)). It also does not read the chapter as a whole and give meaning to each section. *State v. Castleman*, 2022 ND 7, ¶ 13, 969 N.W.2d 169 ("We read statutes as a whole, reading each section in context with related provisions."); *State v. Bell*, 2025 ND 201, ¶ 8 ("When interpreting a statute, our primary goal is to determine the legislature's intent by first looking to the statute's plain language and attempting to give each word, phrase, and sentence its ordinary meaning."). If a nonparent must be seeking custody or visitation for chapter 14-09.4 to apply, there would be no occasion to

apply section 14-09.4-14's modification provisions, making the section inoperative or superfluous.

[¶23] Section 14-09.4-14, N.D.C.C., provides when courts may modify an order granting nonparent visitation. It also provides the standards courts apply when determining whether to modify nonparent visitation. Section 14-09.4-14 applies to Wardner's motion.

[¶24] The district court misapplied the law when it applied N.D.C.C. § 14-09-06.6 instead of N.D.C.C. § 14-09.4-14 to Wardner's motion.

IV

[¶25] The Poraths argue this Court should affirm the district court's order because the court reached the correct result, but for the wrong reason. *State ex rel. City of Marion v. Alber*, 2018 ND 267, ¶ 6, 920 N.W.2d 739 ("We will not reverse a district court decision solely because the court relied on the wrong statute or rule if the result is the same under the correct law and reasoning."). The Poraths' argument ignores the distinctions between N.D.C.C. § 14-09-06.6, the statute the court applied, and N.D.C.C. § 14-09.4-14, the statute the court should have applied.

[¶26] Under N.D.C.C. § 14-09-06.6(6), to modify residential responsibility, the court must make two findings. First, the court must find, "[o]n the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties." Second, the court must find "[t]he modification is necessary to serve the best interests of the child." The court determines the best interest of the child by considering the factors in N.D.C.C. § 14-09-06.2.

[¶27] Section 14-09.4-14(1), N.D.C.C., also requires the court make two findings. First, the court must find "[a] substantial and continuing change in circumstance has occurred relevant to the custody of or visitation with the child." Second, the court must find "[m]odification is in the best interest of the child." Under N.D.C.C. ch. 14-09.4, a court determines the best interest of the child by

7

considering "[t]he applicable factors in section 14-09-06.2[,]" as well as other identified factors.[1] N.D.C.C. § 14-09.4-11.

[¶28] Regarding the first finding, N.D.C.C. § 14-09-06.6(6)(a) focuses on facts that are material and were "unknown" to the court when it entered its prior order. In contrast, N.D.C.C. § 14-09.4-14(1)(a) focuses on whether the change is substantial, continuing, and relevant to the visitation with the child. Applying section 14-09-06.6, the district court found that no material change in circumstance had occurred that would warrant a modification of the order. In doing so, the court primarily relied on what was foreseeable to the Canadian court when it entered its order. The court did not consider whether a "substantial and continuing change in circumstance has occurred relevant to the custody of or visitation with the child." The parties did not brief, and this Court has not addressed, the distinction between the language in section 14-09-06.6(6) and the language in section 14-09.4-14(1)(a). However, having used different language, the legislature must have intended different meanings. *See DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004) (stating "when Congress uses different language in similar sections, it intends different meanings" (quoting *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000))); *Lindsey v. Farmers*

---

[1] Section 14-09.4-11 provides:

> In determining whether an order of custody or visitation to a nonparent is in the best interest of a child, the court shall consider:
> 1. The nature and extent of the relationship between the child and the parent;
> 2. The nature and extent of the relationship between the child and the nonparent;
> 3. The views of the child, taking into account the age and maturity of the child;
> 4. Past or present conduct by a party, or individual living with a party, which poses a risk to the physical, emotional, or psychological well-being of the child;
> 5. The likely impact of the requested order on the relationship between the child and the parent;
> 6. The applicable factors in section 14-09-06.2; and
> 7. Any other factor affecting the best interest of the child.

*Ins. Co. of Oregon*, 12 P.3d 571, 574 (Or. Ct. App. 2000) ("When the legislature uses different language in similar statutory provisions, it is presumed to have intended different meanings."). We cannot conclude the court reached the correct result when it did not apply the correct test.

[¶29] Importantly, N.D.C.C. § 14-09.4-14(2) provides, "Except as otherwise provided in subsections 3 and 4, if a nonparent has rebutted the presumption under section 14-09.4-04 in an initial proceeding, the presumption remains rebutted." Subsections 3 and 4 of section 14-09.4-14 do not apply.[2] Section 14-09.4-04(1), N.D.C.C., provides, "In an initial proceeding under this chapter, a decision by a parent regarding a request for custody or visitation by a nonparent is presumed to be in the best interest of the child." Section 14-09.4-04(2) provides, with limited exception, that a nonparent has the burden to rebut the presumption by clear and convincing evidence. Here, the district court did not determine whether the Poraths rebutted the presumption in the Canadian proceeding. If they did not, they were required to rebut the presumption in this proceeding.

V

[¶30] We reverse the district court's order denying Wardner's motion to modify visitation and remand with instruction that the court address Wardner's motion under N.D.C.C. § 14-09.4-14. The court, in its discretion, and in compliance with N.D.R.Civ.P. 63, may decide the issue on the record or hold additional evidentiary hearings.

[¶31] Because the judge presiding over the original proceedings has retired, the judge assigned to this matter must make a N.D.R.Civ.P. 63 certification prior to conducting further proceedings or, alternatively, conduct a new hearing. *See*

---

[2] Subsections 3 and 4 of N.D.C.C. § 14-09.4-14 provide:
   3. If a motion is filed to modify an order of visitation under this chapter to obtain an order of custody, the nonparent must rebut the presumption under section 14-09.4-04.
   4. On agreement of the parties, the court may modify a custody or visitation order, unless the court finds the agreement is not in the best interest of the child.

*Bullinger v. Sundog Interactive, Inc.*, 2023 ND 138, ¶ 9, 993 N.W.2d 487; *Kershaw v. Finnson*, 2022 ND 165, ¶ 28, 980 N.W.2d 40 ("If a judge is unable to adequately familiarize him or herself with a case based upon the record, the appropriate course of action is to conduct a new hearing or trial."); *Weigel v. Weigel*, 1999 ND 55, ¶ 6, 591 N.W.2d 123 (explaining "N.D.R.Civ.P. 63 allows a successor judge to make findings and conclusions on an existing or supplemented record"). Rule 63 provides:

> If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

VI

[¶32] We reverse and remand for further proceedings consistent with this opinion. Because a new judge must be assigned, the district judge on remand must certify compliance with N.D.R.Civ.P. 63.

[¶33] Jon J. Jensen, C.J.
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte
    Douglas A. Bahr